Harding, Appellant, *v.* Pinchot et al.

Argued November 23, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Ira J. Williams,* with him *Frank S. Busser,* of *Busser & Harding* and *William S. Bailey,* for appellant.—The court below possessed jurisdiction to determine "controversies of the general class," to which the present case belongs: Staryeu v. Midouhas, 299 Pa. 352; Skelton v. Twp., 298 Pa. 471; Page v. Allen, 58 Pa. 338; Mott v. R. R., 30 Pa. 9; Gray v. Camac, 304 Pa. 74.

The governor is subject to the jurisdiction of a court of equity: Chisholm v. Georgia, 2 Dallas 419; Com. v.

Lewis, 282 Pa. 306; Com. v. Snyder, 279 Pa. 234; Mott v. R. R., 30 Pa. 9; Busser v. Snyder, 282 Pa. 440.

It is idle to say the authority of each branch is defined and limited in the Constitution if there be not an independent power able and willing to enforce its limitation: DeChastellux v. Fairchild, 15 Pa. 18; Mott v. R. R., 30 Pa. 9.

The private secretary of the governor is subject to the jurisdiction of a court of equity.

The governor is requiring of applicants an affirmative act before making an appointment. If he should inquire into the fitness or qualifications of the applicant and refuse in his discretion to appoint such applicant, that is his prerogative, but can he say to such applicant, "You must do an affirmative thing (sign a pledge) before you are appointed?" In doing this, he is requiring of the applicant a positive undertaking which he (the applicant) would not otherwise legally be required to do: DeChastellux v. Fairchild, 15 Pa. 18.

There can be no doubt as to the right of the court to entertain jurisdiction of a taxpayer's bill. There can be no doubt of the jurisdiction of the court over the defendants Stahlnecker, Martin and Malone. Therefore, it is respectfully submitted that as to them the bill should be reinstated.

*Wm. A. Schnader,* Attorney General, with him *Harris C. Arnold,* Deputy Attorney General, for appellees.—There is no jurisdiction as to the governor: Hartranft's App., 85 Pa. 433.

The lack of jurisdiction to grant the relief sought against Mr. Stahlnecker is equally apparent.

The bill cannot stand as a taxpayers' bill.

The bill does not allege a cause of action to vindicate private rights or the rights of taxpayers. The only remaining view that could be taken is that it is an attempt to chastise public officials for violation of some fancied right belonging to the public as such.

Such a view, however, is equally fatal to the bill; first, because of improper parties plaintiff, and, second, because courts of equity are without jurisdiction of actions which raise only political questions: Campbell v. Taggart, 2 W. N. C. 93.

OPINION BY MR. CHIEF JUSTICE FRAZER, January 11, 1932:

These two bills filed in the Court of Common Pleas of Dauphin County, one by Mabel M. Hamilton and the other by George J. Harding, against these defendants, raise the same questions of law, were argued together, and will both be disposed of in this opinion. The Hamilton bill avers an interest both personal and as a taxpayer; the Harding bill avers interest as a taxpayer and is filed for himself and "all other taxpayers who may join" therein.

The facts are not in dispute. Miss Hamilton had been a notary public continuously for the past twenty-four years, receiving successive appointments from Governors Stuart, Tener, Brumbaugh, Sproul, Pinchot and Fisher. At the time her last commission expired, March 15, 1931, she applied to the present governor of the Commonwealth, Gifford Pinchot, for reappointment, and accompanied her application with a check for twenty-five dollars, payable to the state treasurer as required by statute. On or about March 12, 1931, her application was refused for the reason,—quoting a letter to her from the governor's secretary,—"that you have crossed out part of the eleventh paragraph of the application." The part of the printed form eliminated was a pledge to be made by applicant that she would "loyally support the policies approved by the people of the Commonwealth in the election of 1930." Both bills ask that the governor be enjoined from "insisting upon the inclusion of said political pledge as a condition precedent to" appointment to public office, that P. S. Stahlnecker, secretary to the governor, be enjoined from insisting upon and distributing

this pledge, that Edward Martin, the state treasurer, and James F. Malone, the state secretary of property and supplies, be restrained, the latter from printing, the former from paying for printing the pledge, and that the pledge itself be declared illegal. By petition under the provisions of the Act of March 5, 1925, P. L. 23, the attorney general questioned the court's jurisdiction in so far as the bills relate to the governor, the other defendants filed similar petitions under the same act, and after argument before the court below in banc, decrees were entered dismissing both bills. We pass the question raised as to the propriety of the requirement of a pledge of the character now before us, printed at the governor's instance on application forms for appointment to state offices.

The governor's statutory power and discretion in appointment of notaries public is broad: The Act of March 5, 1791, 3 Smith's Laws 6, section 2, provides: "After the first day of September next, the governor shall appoint and commission a competent number of persons, of known good character, integrity and abilities, as notaries public for the Commonwealth of Pennsylvania, to reside within such place or places within this State, as the governor shall in and by the respective commissions direct;......no person shall be commissioned as a notary, who shall not have resided within this Commonwealth two years next previous to his appointment." The Act of February 19, 1873, P. L. 36, provides: "The governor is hereby authorized to appoint as many notaries public as in his judgment the interests of the public may require: Provided, That before any commission shall be issued under this act, a receipt from the state treasurer shall first be produced, showing the payment of twenty-five dollars into the state treasury, for the use of the Commonwealth." These two acts empower the governor to judge the number and personality of those appointed by him to be notaries public in this State. Inasmuch as these appointments are entirely subject to his

discretion, he may refuse to appoint for reasons best known to himself or for no reason, and what is true of original appointments is applicable to reappointments.

As to the legality of the pledge in question, which the governor has promulgated, we have only to say it appears so capable of various interpretations that we are at a loss to know what its exact legal significance is, if in law it has any. Whether "the policies" referred to indicate the policies of a political party or those of an individual or individuals elected to office in 1930, or both, and whether or not any such policies are reducible to terms of sufficient exactitude to make the pledge legally significant, are matters we seriously question. Our view of the interpretation the governor may place on the words of the pledge could not be more than a surmise upon our part. Accordingly, we are powerless either to interpret the phrase or hold that it is intrinsically illegal. "Equity is concerned only with questions which affect property, and it exercises no jurisdiction in matters of wrongs to the person or to political rights": Bispham's Equity, 10th edition, page 64. Miss Hamilton was not possessed of a right to be appointed a notary public, no mater how meritorious her application may have been.

As to the alleged expense incurred by the Commonwealth in including the pledge objected to in blank forms of applications for appointment to office by the governor, we find nothing in the record tending to show the cost to the State of such printing, or even that the addition of the words complained of increases the cost in the slightest extent. In any event, the rule of de minimis applies to this point.

In view of the absence of a pretension of claim of right to appointment by Miss Hamilton and the bald averment by plaintiffs that the State has paid or will pay an indefinable sum for printing the pledge, the case is barren of any fact over which we can take equitable jurisdiction.

In answer to statements made by the attorney general at bar regarding immunity of the governor, it may be well to repeat that when we, in the past, refrained from issuing judicial process against the governor, in deference to the fact that he represents a coördinate branch of the government (Hartranft's App., 85 Pa. 433), this court did not divest itself of power to issue judicial process to him in an appropriate case. The rule enunciated in the Hartranft Case was that, where it was sought to compel the governor by judicial process and he made answer that the decree prayed for would interfere with the proper performance of his executive duties, the courts would not issue mandamus to compel him to act. However, it should not be forgotten that the people are sovereign and their Constitution is the fundamental law. That Constitution provides: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay": Article I, section 11. This court has at no time declared that, in our bounden duty to protect the Constitution and constitutional rights of Pennsylvania citizens, we may not in extreme cases restrain even the governor. Although it is true that we will not issue judicial process to the chief executive except in a case of magnitude, yet where his action is in conflict with constitutional provisions, it is still the law that we retain the power thus to proceed should he act unconstitutionally so as to divest private rights or dispose of public property: Mott v. P. R. R. Co., 30 Pa. 9, 33. "It is idle to say the authority of each branch is defined and limited in the Constitution, if there be not an independent power able and willing to enforce the limitations...... From its every position, it is apparent that the conservative power is lodged with the judiciary": Chief Justice GIBSON in DeChastellux v. Fairchild, 15 Pa. 18, 20.

We have frequently issued or sustained process to high officials of the State of lesser rank than the governor: Com. v. Lewis, 282 Pa. 306; Busser v. Snyder, 282 Pa. 440; Com. v. Snyder, 279 Pa. 234; Mott v. P. R. R. Co., supra. However, in the present proceedings, as to the governor's secretary, we decline jurisdiction because we find nothing in the record before us regarding any act of his separate from his secretarial performance as the governor's personal representative. If the governor is not restrained in a particular case, it would be illogical to restrain his secretary, who is carrying out his directions. As above stated, there is nothing before us to show that it has or will cost the State of Pennsylvania financial outlay to the slightest extent to include the few words of the so-called pledge in the blank application forms for appointments; consequently, we must also deny jurisdiction as regards Edward Martin, the state treasurer, and James F. Malone, the state secretary of property and supplies.

In concluding, we reiterate the reluctance of the courts to issue judicial process against the governor, in deference to his position, and, as stated above, in none but extreme cases should such judicial process be issued.

The bill in each appeal is dismissed and the costs are assessed against the respective plaintiffs.