DREW, Justice.
We accept jurisdiction of this original proceeding in prohibition pursuant to the provision of the Florida Constitution which authorizes this Court to issue such writs “when questions are involved upon which a direct appeal to the supreme court is allowed as a matter of right.” [1] The case requires that we construe controlling provisions of the Florida Constitution. Hence, an appeal would come here from any final judgment that might be entered by the trial court.
The Respondent Judge has by formal order required the Governor and Gerald Mager, his subordinate and agent, to appear before him on a day certain and show cause why they should not be adjudged in contempt of Respondent’s court for certain conduct set forth in an affidavit filed by Judge Baker. The Judge alleges in his order that the conduct constituted a willful, wanton and contemptuous attempt to influence him to rule in a manner contrary to the Court’s conscience in *251 presiding over the cases of State of Florida v. Max Diamond a/k/a Mike Diamond and State of Florida v. Howard C. Edwards.[2]
The Governor asserts that the contempt order interferes with his ability as Governor to carry out the duties and responsibilities of his office under the constitution of this state and that he, as Governor, and his subordinate Gerald Mager are immune from any jurisdiction or command of said court for contempt.
Before proceeding to a consideration of the case, it is necessary to determine the scope of the inquiry. Judge Baker is Judge of the Criminal Court of Record of Dade County. He is an officer subject to removal by the Governor “for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony.” [3] The function of courts is historically limited to deciding the particular case under consideration. We are confined in our inquiry here to determining whether a judicial officer who is subject to removal by the Governor can use the processes and power of his court to adjudge the Governor in contempt. In such a determination, we must consider as a necessary implication of the contempt power the court’s authority to forcibly restrain or imprison the Governor as punishment for his contemptuous conduct.
The answer to this inquiry has apparently been obvious to our forefathers, for throughout the history of the republic we find no record of a contempt proceeding ever having taken place under the particular circumstances before us. No case has been cited, and we have found none, in which any court has held a Governor in contempt for any act in furtherance of or connected with his official duties and responsibilities as Governor. In one instance the statement was made that “in extreme cases” courts have the power to restrain the Governor.[4] But, even in that case such power was not employed.
Under our constitution the Governor is vested with the “supreme executive power.” [5] He is the commander in chief of all of the state’s military forces. He must see that all laws of the state are faithfully executed, commission all state and' county officers, and transact all necessary business with the officers of government. *252 Many other duties are directly given him hy the sovereign people of the state in the constitution. It is unthinkable that any inferior officer of this state could, in the guise of the exercise of judicial power, thwart the powers of the executive and thereby prevent or interfere with the full, unfettered performance of his official du ties. The fact that the order names him as an individual instead of Governor is utterly of no import. To restrain the individual would be to restrain the Governor.[6]
The discussions and conferences between the Governor and Judge Baker related to two cases pending before the Judge which had evoked great publicity in Dade County and the state at large. The Governor, in discharging his duty as Chief Executive to insure that all laws are faithfully executed, may be under a duty to suspend a judge from office for his conduct in a particular case.[7] The Governor may have had in mind the possible exercise of this discretionary power over Judge Baker. It is only proper to assume his conferences were for the legitimate purpose of learning facts upon which to base such an exercise of his discretionary power, for it will generally be presumed that the action of the Chief Executive is in accordance with his official duty. Such an inquiry would assuredly be within the perimeter of his authority as Governor.[8]
The charges of Judge Baker are serious accusations against the Governor, if true. But we hold that the Governor in such conduct must be cloaked with immunity. The proper forum for such charges is the House of Representatives under the- provisions of Article III, Section 17, of the Constitution of 1968, or a grand jury.[9]
Our conclusion under the facts here, that the Governor and his subordinate in his presence and under his immediate supervision [10] are completely immune from the processes of the Criminal Court of Record of Dade County, is supported by all relevant authority we have been able to find on the subject.[11] Unquestionably *253 the dearth of authority is occasioned by the fact that the respective branches of government in our country have throughout our history assiduously avoided any encroachment on one another’s authority.[12] In those few instances where difficult cases have arisen, each branch has had enough foresight and respect for the orderly functioning of the governmental processes to avoid a confrontation.[13]
It was urged upon us at oral argument that a Governor’s immunity from the processes of the judiciary extended even to felonies which might be committed by him. In the narrow posture of this case we do not reach that question, and what we hold here would not be authority should such an unlikely event occur.[14] Nor does our conclusion necessarily control a situation which might arise under a contempt order issued by a judicial officer subject only to impeachment for misdemeanors committed in office.[15]
There has been filed in this cause a Motion for an order directing the Clerk of the Circuit Court of Dade County to make available to Judge Baker for his examination the testimony of Governor Kirk and Gerald Mager before the Dade County Grand Jury and any waivers of immunity executed by them. There is no merit to this Motion and the same is hereby denied.[16]
*254 Honorable Paul Baker, Judge of the Criminal Court of Record of Dade County is hereby prohibited from exercising any jurisdiction to enforce the Order to Show Cause of May 3, 1969, and should forthwith take whatever action is necessary to cancel and dismiss said charges and the Order of Contempt issued thereon.
It is so ordered.
ERVIN, C. J., and ROBERTS, ADKINS and BOYD, JJ., concur.

. Fla.Const. art. V, § 4(2) (1885), F.S.A.

.The Order to Show Cause contained, inter alia, the following allegations: “That the defendants, Claude R. Kirk, .Tr., and Gerald Mager, did meet with the aforementioned judge before whom the Diamond-Edwards cases were pending in the County of Dade and State of Florida in a hotel room * * * located in the County of Dade and State of Florida and did then and there inform the above-mentioned Judge of the Criminal Court of Record in and for Dade County, Florida, that they had received information that the cases against the defendants, Howard C. Edwards and Max Diamond a/k/a Mike Diamond were about to be dismissed by the Court on a question of jurisdiction and that they attempted to exert influence and pressure upon the aforementioned judge of the Criminal Court of Record in and for Dade Connty, Florida, not to dismiss said eases and otherwise attempted to instruct the aforementioned judge on the manner and methods by which the aforementioned judge should conduct the case at bar.
“That the defendants, Olaude R. Kirk, Jr., and Gerald Mager, did on the 24th day of April, A. D. 1969, in the County and State aforesaid demand that the judge presiding over such cases follow their specific instructions as to the handling of such cases, to wit: to deny all pending motions and proceed to expedite the cases to trial.”

. Fla.Const. art. IV, § 7(a) (1968). It should be pointed out here that Supreme Court Justices, District Court Judges and Circuit Court Judges are subject to impeachment under Article V, Section 17, Florida Constitution of 1885, and, therefore, under the above provision of the 1968 Constitution would not be subject to removal by the Governor.

. Harding v. Pinchot, 306 Pa. 139, 159 A. 16 (1932).

. Fla.Const. art. IV, § 1(a) (1968).

. See Mississippi v. Johnson, 71 U.S. (4 Wall.) 475, 18 L.Ed. 437 (1867).

. Only those members of the judiciary not subject to impeachment under Article V, Section 17, Florida Constitution of 1885, are removable or suspendable by the Governor.

. But note the limitation upon the Governor’s suspension power in In re Advisory Opinion to the Governor, 213 So.2d 716 (Fla.1968).

. According to the Petition for Writ of Prohibition herein, the Respondent Judge Baker, as well as the Governor and Mr. Mager, testified before the Dade County Grand Jury. The Grand Jury took no action on the matter.

. In Appeal of Hartranft, 85 Pa. 433, 444, 27 Am.Rep. 667 (1877), the court said: “In order to simplify matters, we may treat this case just as though the process, first and last, were against the Governor alone; for if he is exempt from attachment because of his privilege, his immunity protects his subordinates and agents’’ (emphasis added). Mr. Mager is Legal Counsel to tbe Governor and a member of the Governor’s staff.

. See, e. g., State ex rel. Axleroad v. Cone, 137 Fla. 496, 188 So. 93 (1939) (judiciary is without power to direct or coerce the Governor in the exercise of any administrative function) ; State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129, 92 A.L.R. 988 (1934) (Supreme Court not authorized to examine and determine sufficiency of the evidence supporting executive order of suspension); State ex rel. Bisbee v. Drew, 17 Fla. 67 (1879) (mandamus proceeding in which Court held that the Governor could not be compelled to perform an “executive” or “political” act involving his discretion and judgment); Towle v. State ex rel. Fisher, 3 Fla. 202 (1850) (writ of mandamus to State Comptroller to compel performance of a discretionary act denied); Thompson v. German Valley R. R., 22 N.J.Eq. 111 (1871) (Governor “bound” to appear and testify before lower court in response to subpoena duces tecum, but Court of Appeals, while recognizing possibility of contempt for certain conduct of the Governor, refused to allow court order requiring his appear- *253 anee or to compel him by contempt proceedings, “because it might bring the Executive in conflict with the judiciary”); Harding v. Pinchot, 306 Pa. 139, 159 A. 16 (1932) (judicial process will not issue to the Governor except in a case of magnitude); Appeal of Hartranft, 85 Pa. 433, 27 Am.Rep. 667 (1877) (lower court exceeded its jurisdiction when it subpoened the Governor, Secretary of the Commonwealth, Adjutant-General and other officers of the executive department to appear as witnesses before a grand jury investigating civil disorder); Ekern v. McGovern, 154 Wis. 157, 142 N.W. 595, 46 L.R.A.,N.S., 796 (1913) (an error in judgment by Governor in exercise of lawful authority is not reviewable by the courts). See also Mississippi v. Johnson, 71 U.S. (4 Wall.) 475, 18 L.Ed. 437 (1867); United States v. Burr, 25 F. Cas. 30 (No. 14,692d) (C.C.D.Va.1807); State ex rel. Hatton v. Joughin, 107 Fla. 850, 145 So. 174 (1933); State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 133 N.W. 857, 39 L.R.A.,N.S., 788 (1911); Annot., 105 A.L.R. 1124 (1936).

. For this Court’s resolution of a prior conflict between the Governor and Judge Baker over prosecution of the same criminal eases from which this controversy has arisen, see Kirk v. Baker, 224 So.2d 311 (Fla.1969) (Opinion filed April 3, 1969).

. The following observation of Chancellor Zabriskie in Thompson v. German Valley R.R., 22 N.J.Eq. 111, 114 (1871) (quoted with approval in Appeal of Hart-ranft, footnote 10, supra, with reference to such a possible confrontation), is most appropriate: “The Governor cannot be examined as to his reasons for not signing tile bill, nor as to his action in any respect regarding it. But there is no reason why he should not be called upon to testify as to the time it was delivered to him; that is a bare fact, that includes no action on his part. To this extent, at least, I am of opinion that he is bound to appear and testify. But I ioill malee no order on him for that purpose. * * * Such order ought not to be made against the Executive of the state, because it might bring the Executive in conflict with the judiciary. * * * ” (emphasis added) See also, i. e., Mississippi v. Johnson, 71 U.S. (4 Wall.) 475, 18 L.Ed. 437 (1867); State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129, 92 A.L.R. 988 (1934).

. Fla.Const. art. Ill, § 17(c) (1968), provides: “Conviction or acquittal [in impeachment proceedings] shall not affect the civil or criminal responsibility of the officer.” See also Section 114.01(7), Florida Statutes, 1967, which provides that every office shall be deemed vacant upon “The conviction of the incumbent of any felony, or an offense involving a violation of his official oath.”

. Fla.Const. art. V, § 17.

. Moreover, since oral argument it has been brought to our attention that the Court of Appeals, Third District, has entered a judgment prohibiting inspection by Judge Baker of the testimony before the grand jury. State ex rel. Oldham v. Baker, Case No. 69,424 (3d Dist.Ct.App. Fla., filed June 17, 1969) [226 So.2d 21.]