642

Leonard E. Sweeney, Esquire, Vincent S. Mazza and James P. Heffley, Plaintiffs *v.* C. DeLores Tucker, Secretary of the Commonwealth; Grace M. Sloan, Treasurer of the Commonwealth; Herbert Fineman, Speaker of the House; K. LeRoy Irvis, Majority Leader of the House; Samuel Rappaport, Chairman of the Ethics Committee; Jean Francis, House Comptroller, Defendants.

Argued October 29, 1975, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Thomas A. Livingston,* with him *Livingston, Miller &
Haywood,* for plaintiffs.

*Melvin R. Shuster,* Deputy Attorney General, for de-
fendants, Tucker and Sloan.

*Russell A. Davis,* Chief Legal Counsel, for defendants,
Fineman, Irvis, Rappaport and Francis.

OPINION BY JUDGE ROGERS, January 14, 1976:

Leonard E. Sweeney, formerly a member of the Pennsylvania House of Representatives, and two of his former constituents of the Seventeenth Legislative District have filed a complaint in equity against the Comptroller of the House of Representatives, two high officers of the Commonwealth and three members of the House. The plaintiffs claim that Mr. Sweeney's expulsion from membership in the House violated his asserted constitutional right to his House seat and to payment of salary and of the plaintiff-constituents' right to be represented in the House. They seek injunctive relief that Mr. Sweeney be reinstated as a member of the House with back pay and declaratory relief in the form of a statement that the action of the House expelling Mr. Sweeney was unlawful. All of the defendants have filed preliminary objections in the nature of demurrers. The House members and the Comptroller of the House have additionally raised a question of our jurisdiction of the subject matters.

We learn from the plaintiffs' complaint, the averments of which we must accept as verity, that Mr. Sweeney was elected to represent the Seventeenth Legislative District on November 5, 1974. He took the oath of office and was seated on January 7, 1975. On January 10, 1975, Mr. Sweeney was indicted by a grand jury of the United States District Court for the Western District of Pennsylvania on one count of conspiracy to commit mail fraud and five counts of mail fraud.[1] On July 30, 1975, a trial jury found Mr. Sweeney guilty of three counts of mail fraud. On the same day the District Court Trial Judge entered judgments of sentence against Mr. Sweeney of imprisonment and to pay fines and costs. Before sentenc-

---

1. The charges were that Mr. Sweeney, a lawyer, claimed damages from insurance carriers for fictitious injuries assertedly sustained by clients in fictitious motor vehicle accidents.

ing, Mr. Sweeney's counsel told the Judge that Mr. Sweeney would resign his seat in the House and that a letter of resignation was about to be prepared for Mr. Sweeney's signature. Mr. Sweeney filed a timely appeal from the judgments of sentence to the Third Circuit Court of Appeals.

Mr. Sweeney did not resign his seat in the House of Representatives. On August 18, 1975, the House Ethics Committee notified Mr. Sweeney that it would meet and discuss his status as a member of the House on August 25, 1975, inviting him to attend in person or with or by counsel. The Ethics Committee, after its meeting, at which neither Mr. Sweeney nor his counsel appeared, concluded that its jurisdiction was limited to violations of the Legislative Code of Ethics and House Rules and made no recommendation to the House. The House of Representatives met in Special Session to consider action on Mr. Sweeney's status on August 27, 1975. Again, neither Mr. Sweeney nor anyone for him appeared. After entering into its own records Mr. Sweeney's indictments and the judgments of sentence against him, the House by vote of 176 in favor and 1 against, adopted the following resolution:

"WHEREAS, Representative Leonard E. Sweeney was tried and convicted by the court and a jury in the United States District Court for the Western District of Pennsylvania for violation of Title 18, United States Code, Section 1341; and

"WHEREAS, Sentence pursuant to a finding of guilty was imposed by the court on July 30, 1975; and

"WHEREAS, Pursuant to Article II, Section 9 of the Constitution of the Commonwealth of Pennsylvania the House of Representatives has the exclusive power and authority to judge the qualifications of its members; therefore be it

"RESOLVED, That pursuant to the powers granted to the House of Representatives under Article

II, Section 9 and Section 11 of the Constitution of the Commonwealth of Pennsylvania, the House of Representatives does hereby expel Leonard E. Sweeney as a member of the House of Representatives of Pennsylvania."

The Speaker of the House thereupon declared that a vacancy existed in the office of Representative for the Seventeenth Legislative District and issued a writ calling for special election on November 4, 1975.[2]

A writ of election was duly forwarded to the Secretary of the Commonwealth and a special election to fill the vacancy was conducted on November 4, 1975.

The plaintiffs filed their complaint in this Court on September 24, 1975, naming as defendants the following persons, holding the indicated State offices or House positions: C. DeLores Tucker, Secretary of the Commonwealth; Grace M. Sloan, Treasurer of the Commonwealth; Herbert Fineman, Speaker of the House; K. LeRoy Irvis, Majority Leader of the House; Samuel Rappaport, Chairman of the House Ethics Committee; and Jean Francis, Comptroller of the House.

Plaintiffs' counsel conceded at argument that the complaint did not state a cause of action against State Treasurer Sloan.

The defendants Fineman, Irvis and Rappaport are members of the House. Article II, Section 15 of the Pennsylvania Constitution provides:

> "The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breech or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; *and for any speech or de-*

---

2. Article II, Section 2 of the Pennsylvania Constitution provides, in part: "Whenever a vacancy shall occur in either House, the presiding officer thereof shall issue a writ of election to fill such vacancy for the remainder of the term."

*bate in either House they shall not be questioned in any other place."* (Emphasis supplied.)

Neither the defendants Fineman, Irvis and Rappaport, who have filed a vast brief, nor we, were able to find Pennsylvania cases interpreting or declaring the effect of the emphasized portion of Article II, Section 15. However, Article I, Section 6 of the United States Constitution declares that Senators and Representatives of the Congress of the United States "for any Speech or Debate in either House, . . . shall not be questioned in any other place." This clause has been construed by the Supreme Court of the United States not only to provide a defense to members on the merits but protection from the burden of defending themselves against suits questioning their legislative activities. The cases are collected and the principles discussed in *Powell v. McCormack,* 395 U.S. 486, 501 (1969), where it was held that the Speech or Debate Clause of the United States Constitution was a bar to a Congressman's action against his colleagues for excluding him from the House of Representatives. *Powell v. McCormack, supra,* furnishes recent and most persuasive authority for a holding by us that Article II, Section 15 of the Pennsylvania Constitution bars the instant action against Fineman, Irvis and Rappaport and on this authority we will dismiss the complaint against those defendants.

There remain for consideration the plaintiffs' actions against C. DeLores Tucker, the Secretary of the Commonwealth, and Jean Francis, the Comptroller of the House of Representatives. Secretary Tucker has filed preliminary objections in the nature of a demurrer which she supports by saying that her duties upon receipt of a writ of election under the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2601 et seq., are ministerial and that the complaint therefore cannot and does not state any wrongdoing on her part. The objection is without merit. The central purpose of the equity

action is to obtain an order voiding the writ of election; if the action succeeds and the writ be struck down, the plaintiffs would need relief against the Secretary's continued actions in reliance on the writ. *Piccirilli Bros. v. Lewis*, 282 Pa. 328, 127 A. 832 (1925); *Commonwealth ex rel Bell v. Powell*, 249 Pa. 144, 94 A. 746 (1915). However, since we hold hereinafter that the cause against the House for expelling Mr. Sweeney is not justiciable, the writ of election will stand. It follows that the relief sought against Ms. Tucker, which depends entirely on the alleged invalidity of the writ, cannot be granted and that the complaint against her must also be dismissed.

With respect to Jean Francis, Comptroller of the House of Representatives, the complaint seeks our order compelling her to prepare and present to the Pennsylvania Treasurer requisitions for Mr. Sweeney's back pay and to continue forwarding such requisitions until Mr. Sweeney's term expires.

In *Powell v. McCormack, supra,* it was held that the Speech or Debate clause was not a bar to a review of the merits of the House of Representatives' exclusion of the plaintiff where fiscal employes of Congress were named as defendants and the plaintiff sought pay he would have earned if not excluded. On this authority, the House Comptroller being here a defendant, we are required to consider and decide the issues of whether we have jurisdiction and, if so, whether the case is justiciable.

Again following the holding of the United States Supreme Court in *Powell v. McCormack, supra,* we have concluded that we have jurisdiction. Section 401(a)(i) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, *as amended,* 17 P.S. §211.401(a)(i), confers upon this court original jurisdiction of civil actions against any officer of the Commonwealth, acting in his official capacity. Section 8(h) of The Commonwealth Court Act, Act of January 6, 1970, P.L. (1969) 434, *as amended,* 17 P.S. §211.8(h) confers on this Court all

powers possessed by common pleas courts, among which are the power and jurisdiction of courts of chancery described in Section 13 of the Act of June 16, 1836, P.L. 784, 17 P.S. §282 and Section 1 of the Act of February 14, 1857, P.L. 39, 17 P.S. §283. These powers include the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals.

We have determined, however, that the plaintiffs' action is not justiciable. Article II, Section 11 of the Pennsylvania Constitution provides:

> "*Each House shall have power* to determine the rules of its proceedings and punish its members or other persons for contempt or disorderly behavior in its presence, to enforce obedience to its process, to protect its members against violence or offers of bribes or private solicitation, and, *with the concurrence of two-thirds, to expel a member, but not a second time for the same cause,* and shall have all other powers necessary for the Legislature of a free State. A member expelled for corruption shall not thereafter be eligible to either House, and punishment for contempt or disorderly behavior shall not bar an indictment for the same offense." (Emphasis supplied.)

Nothing is more important to the continued health of our American constitutional system than that each of the three branches of our Federal and State governments refrain from intermeddling or interfering in matters committed by the people to other branches. It would seem that the judiciary, which alone of the branches has claimed the power to declare unlawful and to nullify actions of the other branches, should be particularly circumspect to avoid such interference. When the desirability of avoiding judicial action in a given matter has preponderated, the courts have professed adherence to a proclaimed principle that the judiciary will not decide

political questions—that political questions are not justiciable. The subject is fully and definitively explored by Mr. Justice BRENNAN in *Baker v. Carr,* 369 U.S. 186, 208 (1962). It suffices for our purpose to quote the following from that discussion:

> "Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question." 369 U.S. at 217.

We have concluded that Article II, Section 11 of the Pennsylvania Constitution is a "textually demonstrable, constitutional commitment of the issue [of the expulsion of a member of the General Assembly] to a coordinate political department"—in this case, the Pennsylvania House of Representatives.

We recognize that in both *Powell v. McCormack, supra,* and *Bond v. Floyd,* 385 U.S. 116 (1966), it was held that the matter of exclusion for asserted lack of qualification, as distinguished from expulsion, of a Legislator was justiciable. In both cases the constitutions prescribed qualifications and in both the exclusions were for extra-constitutional reasons. In the case of *Bond v. Floyd, supra,* the Legislator was excluded on the basis of a determination by the Legislature that he could not sincerely take the oath of membership, although he was willing to take the oath; and in the case of *Powell v.*

*McCormack, supra,* Congressman Powell was excluded allegedly for misappropriating public funds and for incurring the contempt of New York Courts. In the latter case, the United States Supreme Court concluded that the textually demonstrative commitment to the Congress[3] of the power to judge the qualifications of its members was that of judging whether the member met the qualifications required by the Constitution. Both Chief Justice WARREN, writing for the majority in *Powell v. McCormack, supra,* and Justice DOUGLAS, who filed a concurring opinion, pointed out the distinction between exclusion and expulsion, and Justice DOUGLAS remarked that "if this were an expulsion case I would think that no justiciable controversy would be presented, the vote of the House being two-thirds or more." 395 U.S. at 553.

Our holding that the instant case is not justiciable is supported by *Harrington v. Carroll,* 428 Pa. 510, 239 A.2d 437 (1968), a suit to enjoin an Election Return Board from certifying and other councilmen from seating a person elected to Philadelphia City Council on the ground of asserted lack of qualifications. The Supreme Court's affirmance of the dismissal of the action was founded on a statute making council the sole judge of the qualifications of its members. The majority opinion in *Harrington v. Carrol* concludes with the following short paragraphs:

> "To argue that the right of the legislatures to determine the qualifications of its members is a wall which should be shattered is to maintain that representative government is on the way toward its own demolition. It is to prevent any such catastrophe that the United States and Pennsylvania Constitutions provide for courts, judges and law. And it is our duty, within the framework of those constitutions, to defend that wall by upholding the sanctity of the system of constitutional separation of powers.

3.   By Article I, Section 5 of the United States Constitution.

"Our decision that the City Council of Philadelphia has exclusive jurisdiction to determine the qualifications of its members, including, of course, the subject of this litigation, John B. Kelly, makes it unnecessary to discuss the other matters raised in the complaint and argued in the appeal." 428 Pa. at 519-20, 239 A.2d at 441-42.

Further support may be found in *Auchenbach v. Seibert*, 120 Pa. 159 (1888), where our Supreme Court held that a Court of Quarter Sessions acted "ultra vires" in assuming "jurisdiction" to pronounce upon the qualification of a city councilman in the face of a statute similar to that in *Harrington v. Carroll, supra.*

We hold that the issue of the expulsion of a member has, by Article II, Section 11, been textually demonstrably committed to the exclusive power of the Houses of the General Assembly and that it is not justiciable.

## ORDER

AND NOW, this 14th day of January, 1976, it is ordered that the preliminary objections in the nature of demurrers of the several defendants be and they are hereby sustained, and that the complaint be and it hereby is dismissed as against all of the defendants.

---

CONCURRING OPINION BY JUDGE KRAMER:

Although I concur in the well-reasoned opinion of the majority, I believe it necessary to add the following thoughts.

To be sure, the judicial branch of government should always exercise restraint in a case such as this. I agree that the power to expel for cause a member of the House of Representatives lies exclusively with the House; but I want to make it clear that, from my point of view, that power is not absolute. That awesome power is always subject to all of the other provisions of the Constitution,

and if an exercise of that power is contrary to the will of the people, as manifested by the plain meaning of our Constitution, the judicial branch would be forced to correct a clear violation.

To prove my point, I will hypothesize. If, perchance, more than two thirds of the membership of the House consisted of members of (a) one political party, or (b) one ethnic group, or (c) one sex, etc., and such a majority would arbitrarily vote to expel all minority members of, *e.g.*, (a) another political party, or (b) the black race, or (c) German ancestry, or (d) some religious faith, or (e) the female sex, I believe such expulsions could be violative of the Constitution and could present justiciable issues, which the judicial branch would have a duty to resolve.

Although these possible exceptions may seem remote and improbable, history teaches us that, excepting only death, nothing is absolute in the affairs of mankind.