Richard Robinson, individually and on behalf of all persons similarly situated, Plaintiff *v.* Milton J. Shapp, individually and as Governor of the Commonwealth of Pennsylvania, Defendant.

Argued January 5, 1976, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

154

*Michael Hahalyak,* for plaintiff.

*Kathleen Herzog Larkin,* Deputy Attorney General, with her *Robert Rains,* Deputy Attorney General, *Lawrence Silver,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendant.

OPINION BY JUDGE WILKINSON, January 30, 1976:
This action is before us in our original jurisdiction on preliminary objections filed by the defendant to the plaintiff's complaint in equity. The complaint seeks injunctive relief to set aside the Governor's Executive Order No. 1975-5. The order is entitled "Expansion of the Commitment Toward Equal Rights" and provides:

"In furtherance of my commitment to provide leadership in the effort to obtain equal rights for all persons in Pennsylvania, I am committing this administration to work towards ending discrimination against persons solely because of their affectional or sexual preference.

"Terry Dellmuth, my Special Assistant for Human Services, and Barry Kohn, Director, Community Advocate Unit, Pennsylvania Department of Justice, are hereby assigned to review and monitor this effort. They will work with state agencies and private groups to further define the problem and make recommendations for further action.

"State departments and agencies are instructed to fully cooperate with them in the effort to end this type of discrimination."

The prayer for relief in the complaint is:

"A. That the said executive order be set aside;

"B. That the Governor be enjoined from enforcing the said order;

"C. Such other and further relief as will be appropriate under the circumstances."

The defendant raises a number of preliminary objections. However, we need only consider the objection raising the question of justiciability. The disposition of this question is dispositive of the case. This is stated in the preliminary objections as follows:

"1. This Honorable Court lacks jurisdiction to adjudicate the propriety of an Executive Order which is a broad statement of public or political policy and thus within the sole discretion of the elected Executive.

"2. The doctrines of separation of powers, executive sovereignty and comity with the coordinate branches of government preclude this Honorable Court from exercising its jurisdiction to inquire into the propriety of a discretionary decision of the executive branch of government.

"WHEREFORE, defendant requests that this Honorable Court decline to exercise its jurisdiction and that the Plaintiff's Complaint be dismissed."

We sustain this preliminary objection. Only recently, this Court decided the case of *Sweeney v. Tucker*, 22 Pa. Commonwealth Ct. 642, 351 A.2d 308 (1976), in which we held that the expulsion of a member of the Pennsylvania House of Representatives was within the exclusive power of the House of Representatives, and that its propriety was not justiciable. In that case, Judge ROGERS, speaking for the Court, stated:

"Nothing is more important to the continued health of our American constitutional system than that each of the three branches of our Federal and State governments refrain from intermeddling or interfering in matters committed by the people to other branches. It would seem that the judiciary, which

alone of the branches has claimed the power to declare unlawful and to nullify actions of the other branches, should be particularly circumspect to avoid such interference. When the desirability of avoiding judical action in a given matter has preponderated, the courts have professed adherence to a proclaimed principle that the judiciary will not decide political questions—that political questions are not justiciable. The subject is fully and definitively explored by Mr. Justice BRENNAN in Baker v. Carr, 396 U.S. 186, 208 (1962)." 22 Pa. Commonwealth Ct. at 649, 351 A.2d at 312.

The Governor has issued the Executive Order quoted above as the policy of his administration. The complaint does not allege that the issuing of the policy is against the Crimes Code. It is not illegal to have an "affectional or sexual preference." If the affectional or sexual preference leads one into deviate sexual intercourse in violation of the criminal laws of this Commonwealth, that individual continues to be subject to the penalties of the law. However, the declaration that that individual, with such a deviate affectional or sexual preference that he or she may have had in the past or may in the future commit a criminal act, shall not be discriminated against by state departments or agencies is merely a statement of policy, wise or otherwise.

This is not to say, nor does the defendant argue, that the Governor is above the law. Indeed, in his brief, the defendant candidly and accurately states:

"The Governor is subject only to very specific and well defined limitations. He is not above the law. He is subject to 'arrest, proecution and punishment if he violates the criminal statutes.' Dauphin Co. Grand Jury Investigation Proceedings (No.1), 332 Pa. 289, 296, 2 A.2d 783, 788 (1938). In extreme cases,' where the Governor is alleged to have unconstitutionally divested property rights or dis-

posed of public property, he is subject to judicial process. Harding v. Pinchot, 306 Pa. 139, 145, 159 A. 16, 18 (1932). [There is no such allegation here.] Should he commit 'misbehavior in office,' the proper response is not judicial review, but impeachment by the process delineated in Article 6, §§4, 5, and 6 of the Pennsylvania Constitution."

Accordingly, we enter the following

## ORDER

Now, January 30, 1976, the preliminary objections, based on non-justiciability, are sustained and the complaint is dismissed.

CONCURRING OPINION BY PRESIDENT JUDGE BOWMAN:

The Crimes Code, Act of December 6, 1972, P. L. 1482, *as amended,* 18 Pa. C.S. §101 et seq., is more than a statute prescribing penalties upon conviction for unlawful conduct. It is an expression by the people of this Commonwealth, speaking through their elected representatives, of the standards of conduct that cannot be sanctioned nor accepted if our social structure under law is to be preserved.

Section 3124 of that Code, 18 Pa. C.S. §3124, proscribes voluntary deviate sexual intercourse, characterizing such conduct as a misdemeanor of the second degree—a serious offense.

The issue before us in this case is not whether we individually agree with the standards of conduct declared by law to be unacceptable nor whether a counterculture should prevail. We are now concerned only with the issue of whether or not, by proclamation, the Governor has taken action beyond his power or authority, *i.e.,* whether the proclamation itself sanctions unlawful conduct.

The Governor's Executive Order No. 1975-5 is a masterpiece of obscuration. Proclaiming his leadership

in efforts to obtain equal rights for all persons—a term we can all understand and applaud—he next proclaims his commitment to end discrimination—a widely misused and misunderstood word—against persons "solely because of their affectional or sexual preference." Granted that it is not criminal conduct nor a crime to *have* an affectional preference, it is criminal conduct, however, to *practice* a sexual preference if such sexual preference involves deviate sexual intercourse, conduct which our society has declared unacceptable. That one who engages in such conduct is not prosecuted, or, if prosecuted, is not convicted, does not make such conduct any less unacceptable to the people of this Commonwealth as expressed in the only realistic way norms of interpersonal and social conduct may be expressed under a government of law.

What then does the Governor mean?

There can be no sound argument advanced against the principle, also expressed in our law, that a person convicted of proscribed conduct as a criminal offense needs aid and counseling and an opportunity for gainful employment upon his return to society and that such aid may be afforded by governmental action, either by legislative enactment or executive order. If providing such aid is the intention of the Governor, his proclamation is to be lauded and found to be within his power and authority. It is equally clear, however, that as to an admitted rapist, wife beater or thief who persists in such criminal conduct, whether convicted or not, or who blatantly proclaims persistency of proscribed conduct by "right" or otherwise, it is not within the power or authority of the Governor to end "discrimination" against such persons, including those who acknowledge that they continue to engage in deviate sexual intercourse by way of preference or otherwise.

As Chief Executive Officer, the Governor is not the chief moral officer of this Commonwealth. He is duty

bound to uphold the laws of the Commonwealth, including the purpose and spirit of those laws speaking to such controversial issues as human conduct and social norms to be adhered to under a government of law.

I concur in the majority opinion solely because, in my view, the Governor's proclamation is not, per se, beyond his lawful authority. It is capable of construction and intent within his role as Governor. Its implementation by action of the Governor in whatever form such action might take may very well produce a different result.

Judges CRUMLISH, JR., MENCER and BLATT join in this concurring opinion.