The Honorable Mike Beebe Governor State Capitol, Suite 250 Little Rock, Arkansas 72201
Dear Governor Beebe:
I am writing in response to your request for an opinion regarding issues that have arisen in a contested mayoral election that occurred on November 7, 2006 between Veronica Post and Gary Zolliecoffer. As the background for your four questions, you explain the detailed history giving rise to your questions. The history can be reduced to two categories: litigation and the Board of Election Commissioners' actions, both of which revolve around Zolliecoffer's two felony convictions.
In 1965, Zolliecoffer pleaded guilty to two felonies. He was convicted and sentenced. A few weeks after the November 2006 election, he applied for a pardon from the Governor. That application was denied. The convictions have neither been pardoned nor expunged.
Zolliecoffer received more votes than Post. Two days after the election, Post sued to enjoin the Election Commission from certifying Zolliecoffer's votes. She argued that because Zolliecoffer was a convicted felon, article 5, section 9 of the Arkansas Constitution rendered him ineligible for office and, therefore, the Commission should not certify his votes. The circuit court agreed. Zolliecoffer appealed and the Arkansas Supreme Court reversed, holding that the circuit court lacked jurisdiction over Post's challenge because her challenge was untimely given that Post brought a pre-election challenge after the election. Zolliecoffer v. Post, 371 Ark. 263, 265 S.W.3d 114 (2007) ("Post I").
After Post I, Post filed another suit in circuit court to prevent the Election Commission from certifying Zolliecoffer's votes. This time, she argued that the *Page 2 
Election Commission has a limited window within which to certify the votes for the winning candidate. Because that window had passed, she argued, the Election Commission lacked authority to certify Zolliecoffer's votes. The circuit court dismissed the suit for lack of subject matter jurisdiction. Post appealed. The Arkansas Supreme Court affirmed on procedural grounds. Post v. Franklin County Board of ElectionCommissioners, ___ Ark. ___, ___ S.W.3d ___, 2009 WL 102718 (Jan. 15, 2009) ("Post II").[1]
While Zolliecoffer's appeal was pending in Post I, the Election Commission certified the votes cast for Post. Shortly thereafter, then-Governor Huckabee commissioned Post as mayor. She has been serving in that capacity ever since. Some time after the second appeal, however, the Election Commission certified the votes cast for Zolliecoffer.
On April 1, 2008, you received a form from the Secretary of State. If you sign that form, and it is attested by the Secretary of State, then Zolliecoffer would be commissioned as the Mayor of Altus.
With all this in mind, you ask four questions:
 1. Under the circumstances, is the Governor legally required to commission Zolliecoffer as mayor?
 2. Conversely, is the Governor legally prohibited from commissioning Zolliecoffer as mayor because (a) my predecessor in office already commissioned Post as mayor, and she has taken the oath of office and served as mayor since January of 2007, and/or (b) because Zolliecoffer is not eligible to hold the office pursuant to Article V, § 9 of the Arkansas Constitution?
 3. Can the Governor be judicially compelled, through a writ of mandamus or other comparable form of declaratory or injunctive relief, to commission Zolliecoffer as mayor? *Page 3 
 4. Under the circumstances, in the absence of a commission signed by the Governor, is Zolliecoffer nonetheless entitled to take the oath of office and assume the office of mayor?
RESPONSE
Because your first three questions heavily overlap, I will respond to them together. Your use of the term "legally required" and your reference to a writ of mandamus raise the question of the court's role in the commissioning process. The Arkansas Supreme Court has made clear that matters pertaining to the Governor's commissioning power are nonjusticiable. The courts simply lack subject matter jurisdiction to hear such suits. Hawkins v. Governor, 1 Ark. 570, 1839 WL 103 (1839).[2]
Moreover, short of impeachment, the legislature lacks any authority to second-guess the Governor's official conduct. Id. at *10. Although this gubernatorial independence from review might at first blush appear to afford the Governor unbridled discretion in making a commissioning decision, his discretion is clearly bounded by his oath, which obligates him, inter alia, to "support the Constitution of the State of Arkansas." Ark. Const. art. 19, § 20. The Arkansas Constitution unambiguously provides that an individual with an unexpunged felony conviction is ineligible to hold public office. Ark. Const. art. 5, § 9; see also
A.C.A. § 16-90-112(b) (Repl. 2006). Consequently, given that Zolliecoffer has two unexpunged felony convictions, I believe it would be inconsistent with the terms of the gubernatorial oath of office for the Governor to commission Zolliecoffer as the mayor of Altus.
DISCUSSION
The Hawkins court relied on the separation-of-powers doctrine when it refused to compel the Governor to issue a commission for a duly elected office holder. *Page 4 
 Hawkins reached two holdings, both of which reflect the majority rule. First, the judiciary cannot compel the Governor to make decisions on political matters.[3] Second, the Governor's commissioning authority is a political matter.[4] Accordingly, courts cannot compel the Governor to issue (or refrain from issuing) *Page 5 
commissions. As the Hawkins court indicated, the Governor's commissioning power — like all his other executive powers — is checked in two ways: removal of the Governor by either the legislature through impeachment or the people at the ballot box. The court explained:
 Thus it will be seen that the Constitution places him [the Governor] in a double responsibility: First, the responsibility of the right of suffrage; and lastly, that of impeachment. He is only answerable in one or both of these ways, for his official conduct, while he continues in the exercise of his office. These are the only restrictions upon his discretion, and to them the people confide their rights and interests. To make him accountable in any other way, would be to create a responsibility unknown to the Constitution, and in violation of its authority.
Hawkins, supra, at *10.
Given the Hawkins court's discussion of the constitutional provision that is nearly identical to today's operative provision (art. 6, § 10), the use of the term "shall" in art. 6, § 10 should be clear. Article 6, section 10 states: "All grants and commissions shall be issued in the name, and by the authority, of the State of Arkansas; sealed with the great seal of the State; signed by the Governor, and attested by the Secretary of State." The term "shall," as used here, does not render the Governor's commissioning authority ministerial. Instead, the "shall" establishes the elements that "[a]ll grants and commissions" must contain.
I should note that A.C.A. § 21-2-101 (Repl. 2004) uses the term "shall" in a similar manner. That statute states: "Each mayor of a city or town . . . elected or appointed in this state shall be commissioned by the Governor." The use of the term "shall" could be read in two distinct ways. On the one hand, it could be read as a requirement on the Governor to issue a commission to a duly-elected mayor without regard to whether the mayor-elect is otherwise eligible to hold office. On the other hand, it could be read as a requirement on a mayor-elect to obtain a commission from the Governor before serving. The latter reading is most likely correct for two reasons. First, Hawkins makes clear that the Governor's commissioning authority is discretionary and the Arkansas Supreme Court cannot interfere with that discretion without violating the separation-of-powers doctrine. Similarly, the legislature cannot use section 21-2-101 to force the Governor's hand on discretionary matters lest the legislature also violate the separation of powers. *Page 6 
Second, even if section 21-2-101 could be read as a requirement on the Governor — instead of (or in addition to) the mayor — the statute would conflict with Ark. Const. art. 6, § 10, which the Hawkins court interpreted as vesting a discretionary power in the Governor. The constitution prevails over conflicting statutes.
In summary, and in response to your particular questions, the courts will not issue a mandamus order that either "legally requires" or "legally prohibits" the Governor from issuing or refraining from issuing a commission.
Although this gubernatorial independence from review might at first blush appear to afford the Governor unbridled discretion in making a commissioning decision, his discretion is clearly bounded by the terms of his oath, which obligate him, inter alia, to "support the Constitution of the State of Arkansas." Ark. Const. art. 19, § 20. The Arkansas Constitution unambiguously provides that an individual with an unexpunged felony conviction is ineligible to hold public office. Ark. Const. art. 5, § 9; A.C.A. § 16-90-112(b) (Repl. 2006). As explained more fully below, given that Zolliecoffer has two unexpunged felony convictions, we can infer from these two constitutional provisions that it would be inconsistent with the terms of the gubernatorial oath of office for the Governor to commission Zolliecoffer as the mayor of Altus.
The first limitation on the Governor's discretion is his oath of office. The Governor's oath requires him to uphold the laws of the State of Arkansas. Article 19, section 20 of the Arkansas Constitution requires all executive officers to "solemnly swear (or affirm) that . . . [they] will support. . .the Constitution of the State of Arkansas." Given this fundamental limitation on every exercise of the Governor's authority, the question becomes whether the Governor would violate his oath if he appointed a person who is clearly constitutionally ineligible to hold public office.
The Hawkins court apparently thought it was beyond question that the Governor would violate his oath by appointing a constitutionally ineligible person to hold public office. The Hawkins court presented a hypothetical that was very similar to the situation you posit. The court supposed that the legislature agreed by a sufficient vote to appoint someone to a specific office who was constitutionally ineligible to hold public office. The court then analyzed what would result if the person asked the Governor for a commission. As reflected in the excerpt below, the court concluded by posing a rhetorical question to illustrate that the Governor *Page 7 
would violate his oath if he issued the commission. Indeed, the fact that the Governor would violate his oath by commissioning the constitutionally ineligible person was precisely one of the reasons supporting the court's conclusion that the Governor's decision must be discretionary. The Governor would otherwise be forced to violate his oath, which seems absurd:
 Again the executive is bound to see that the laws are faithfully executed; and he has taken an oath of office to support the Constitution. How can he perform his duty, if he has no discretion left him in regard to granting commissions? For should the Legislature appoint a person constitutionally ineligible to hold any office of profit or trust, would the executive be bound to commission him . . . [even though] his ineligibility was clearly and positively proven? In such case, the exercise of his discretion must be admitted or you make him not the guardian, but the violator of the Constitution. What, then, becomes of his oath of office?
Hawkins, supra, at *12.
The second limitation is the prohibition on felons holding public office. Zolliecoffer is clearly constitutionally ineligible to hold public office because he has two unexpunged felony convictions. Anyone with an unexpunged felony conviction is constitutionally ineligible to hold public office. Ark. Const. art. 5, § 9; A.C.A. § 16-90-112(b) (Repl. 2006); Elana Cunningham Wills, Constitutional Crisis: Can theGovernor (or Other State Officeholder) Be Removed from Office in a CourtAction after Being Convicted of a Felony, 50 Ark. L.Rev. 221, 227 (1997) (noting that art. 5, § 9 has been applied to render municipal officials ineligible to hold office). The lack of felony convictions is considered a legal prerequisite to holding office just like other restrictions such as age and residency. May v. Edwards, 258 Ark. 871, 877, 529 S.W.2d 647,651 (1975) ("The reason one who has been convicted of an infamous crime is prevented from taking office is because he is thereby rendered ineligible just as he would be if he did not possess other qualificationsrequired by law.") (emphasis added). The constitution and the relevant statute are clear that any felony renders the convicted person ineligible to hold public office.[5] The disabling felony can occur before the *Page 8 
candidate takes office.[6] Because Zolliecoffer fails this legal prerequisite, he is constitutionally ineligible to serve as mayor.
In conclusion, the Governor's oath inhibits him from commissioning constitutionally ineligible persons to hold public office. The Governor has taken an oath to uphold the Arkansas Constitution, and commissioning someone to hold office who is clearly constitutionally ineligible to hold public office violates the constitution. This reading of how the Governor's oath affects his commissioning decisions is buttressed byHawkins, which has two clear holdings. First, the courts cannot mandamus the Governor on non-ministerial matters. Second, the Governor's commissioning authority is non-ministerial. One of the principle reasons the court relied on for the second holding is that if the Governor's commissioning authority is ministerial, the Governor might be required to violate his oath by appointing a constitutionally ineligible person to hold public office. This necessarily implies that the Governor's oath inhibits him from commissioning someone to hold public office who is clearly constitutionally ineligible to hold that office. *Page 9 
You also asked whether Post's commission prohibits the Governor from commissioning someone else. The fact that someone currently holds the office after being commissioned does not, by itself, render Zolliecoffer ineligible for the Governor's commission. A person commissioned to office becomes the de facto officer. State v. Johnson, 17 Ark. 407
(1856); Chism v. Martin, 57 Ark. 83, 20 S.W. 809 (1892). The original commission may be superseded by commissioning someone else with superior title to the office. Johnson, supra. Given that Post's votes were certified, she was properly commissioned, and there is no contender with a superior title to the office, she is legally serving as the mayor of Altus, in my opinion.
Question 4: Under the circumstances, in the absence of a commissionsigned by the Governor, is Zolliecoffer nonetheless entitled to take theoath of office and assume the office of mayor?
No. A commission is a prerequisite to serving as mayor. A.C.A. § 21-2-101 (Repl. 2004). Article 6, section 10 of the constitution indicates who signs commissions: the Governor. Section 21-2-101 fills the constitution's silence about who must obtain a commission: those elected to the office of mayor (among others). The relevant portions of section 21-2-101 state: "Each mayor of a city or town . . . elected or appointed in this state shall be commissioned by the Governor." As explained above, this statute creates an obligation on a mayor-elect to obtain a commission as a precondition to serving as mayor.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] I should note that the reported cases were both decided on purely procedural bases. Neither holding directly bears on the issues raised in your opinion request.
[2] Although Hawkins was based on Arkansas's first constitution, whereas my opinion is based on today's constitution, this difference is inconsequential for three reasons. First, the Arkansas Supreme Court reaffirmed Hawkins in a decision under the current constitution. Statev. Churchill, 48 Ark. 426, 426, 3 S.W. 352, 360 (1887). Thus, Hawkins's analysis and rationale also apply under today's constitution. Second, today's relevant constitutional provision (art. 6, § 10) is virtually identical to the provision at issue in Hawkins. The only difference is that today's provision adds the word "grants" in the first phrase: "All grants and commissions shall be issued. . . ." Ark. Const. art. 6, § 10. Finally, the principle on which Hawkins was based — the separation-of-powers doctrine — has at least remained as strong as it was in 1839, and arguably has grown stronger. See, e.g., Op. Att'y Gen. Nos.82-132; 80-70; Note, Spradlin v. Arkansas Ethics Commission: A Hard-LineApproach to Separation of Powers, 48 Ark. L.Rev. 755 (1995).
[3] Am. Jur. 2d Mandamus § 108 ("As to these purely executive or political functions devolving upon the chief executive office of the state. . .the doctrine is uncontroverted that mandamus will not lie to control or compel his action."); Am. Jur. 2d Mandamus § 109 ("While the authorities agree that mandamus will not lie to control or compel the performance of discretionary act of the governor, they are to some extent in conflict as to whether the writ will issue with respect to duties of a ministerial character. Some courts have taken the view that a governor cannot be compelled by mandamus to perform any official act, irrespective of its nature, and so refuse the writ to enforce performance of purely ministerial acts."); 55 C.J.S. Mandamus § 141 ("Courts generally have no power to interfere by mandamus with the governor on questions involving his judgment and discretion. . . ."); 105 A.L.R. 1124, Mandamus toGovernor (1936) ("The general rule is well settled that action by the governor of a state cannot be controlled or coerced by mandamus, in so far as it relates to duties which are strictly and exclusively political and executive, or which require the exercise of official judgment and discretion. The governor, acting as such, is not an officer inferior to the supreme court, and cannot be compelled by mandamus to perform a duty not strictly ministerial.").
[4] Many states follow Arkansas on this point: California: Harringtonv. Pardee, 82 P. 83 (Cal.App., 1905) (holding that the court cannot compel the governor to commission someone because issuing commissions is an "executive and not a ministerial act"); Florida: State ex rel. Bisbeev. Drew, 17 Fla. 69 (1879) (refusing to compel the governor to issue a certificate of election to the relator as Representative in Congress, because the courts cannot command the governor to perform any political duty, and issuing commissions is a political duty); State ex rel. Axlerodv. Cone, 188 So. 93 (Fla. 1939) (holding that the judiciary lacks the power to direct or coerce the Governor in the exercise of any administrative function); see Kirk v. Baker, 229 So.2d 250, 252-53 (Fla. 1969) ("Unquestionably the dearth of authority [on whether courts can mandamus governors to perform political acts] is occasioned by the fact that the respective branches of government in our country have throughout our history assiduously avoided any encroachment on one another's authority. In those few instances where difficult cases have arisen, each branch has had enough foresight and respect for the orderly functioning of the governmental processes to avoid a confrontation."); Indiana: Hoveyv. State, 27 N.E. 175 (Ind., 1891) (refusing to mandamus the governor to issue a commission to someone claiming to have been elected to a county office because issuing commissions is an executive function); Magruderv. Swann, 25 Md. 173 (1866) (holding that mandamus will not lie to compel governor to issue commission to elected judge); Missouri: State ex rel.Bartley v. Fletcher, 39 Mo. 388 (1867) (refusing to mandamus the governor to issue a commission because issuing commissions involves "political discretion" and is merely ministerial); Tennessee: Bates v. Taylor,11 S.W. 266 (Tenn. 1889); Ten. Op. Att'y Gen. 91-95 ("It is well established in Tennessee jurisprudence that a mandamus will not lie to compel the Governor to do any act, however, [sic] ministerial it may be, for the power to issue such writ includes the power to enforce the judgment by his imprisonment, and the judicial department has no power to control the executive department in this way.").
[5] Article 5, section 9 states: "No person hereafter convicted of. . .bribery, forgery or other infamous crime, shall be eligible to the General Assembly or capable of holding any office of trust or profitin this State." (Emphasis added.) Subsection 16-90-112(b) echoes the constitution:
"Every person convicted of bribery or felony shall be excluded from every office of trust or profit and from the right of suffrage in this state." Thus, a convicted felon is ineligible to hold public office.
[6] Two independent bases support this conclusion. One is textual, the other based in case law. First, the texts of the relevant constitutional provision (art. 5, § 9) and the statute (§ 16-90-112) place no time limits on when the disabling felony must occur. Thus, by the plain language of the relevant provisions, the disabling felony can occur before the person convicted attempts to hold office. Second, at least three Arkansas Supreme Court cases have applied art. 5, § 9 to conduct that occurred before taking office. Irby, supra; Ridgeway v. Catlett, 238 Ark. 323,379 S.W.2d 277 (1964); Powers v. Bryant, 832 S.W.2d 232 (1992). In Irby, the court held that a county judge was ineligible to hold his position because he had been convicted of a felony before his election. Not even a presidential pardon was sufficient to restore his eligibility. InRidgeway, the court stated that a candidate for governor was ineligible to hold the office because he had been convicted of a felony before taking office. In Powers, the court addressed a citizen's request that the court mandamus the Attorney General to file a usurpation suit to oust a sitting mayor because the mayor had been convicted of a felony many years before taking office. But in Powers, unlike Irby or Ridgeway, the conviction had been expunged. The court held, among other things, that an "expunged felony conviction" is not a conviction for purposes of article 5, section 9. The case turned on the expungement, not on the fact that the conviction occurred before taking office. Thus, Powers, applying article 5 to mayors, falls in line with Irby and Ridgeway (though Powers
is slightly less explicit) in holding that a past conviction is sufficient to disable a person from holding office under art. 5, § 9. *Page 1