403 So.2d 513 (1981)
Arnett GIRARDEAU, Appellant,
v.
STATE of Florida, Appellee.
No. AF-151.
District Court of Appeal of Florida, First District.
August 31, 1981.
Rehearing Denied October 2, 1981.
Wm. J. Sheppard and Elizabeth L. White, of Sheppard & Carithers, P.A., Jacksonville, for appellant.
Jim Smith, Atty. Gen., and David P. Gauldin, Asst. Atty. Gen., for appellee.
LARRY G. SMITH, Judge.
Appellant, Arnett Girardeau, a member of the Florida House of Representatives, *514 appeals a judgment of contempt entered by the Circuit Court for his refusal to answer questions before a Union County grand jury. The issue presented for our consideration, simply stated, is whether appellant may lawfully assert a privilege of non-disclosure of information received by him in connection with the discharge of his duties as a legislator, when that information is sought by a grand jury in connection with its investigation of a crime. We conclude that the trial court correctly rejected the claim of privilege and therefore did not err in ordering appellant to answer questions propounded to him before the grand jury, nor did the court err in adjudicating and sentencing appellant for contempt of court for his refusal to answer after being so ordered. We affirm.
Appellant was Chairman of the House Committee on Corrections, Parole and Probation, and a member of the Ad Hoc Subcommittee on Management and Oversight. The committee and subcommittee were investigating the management of the Department of Corrections, including inmate allegations of abuse, and allegations involving the death of inmate Vertis Graham, at Union Correctional Institution. In order to facilitate this investigation, appellant and other committee members received information from inmates and correctional officers at various correctional institutions. Among those interviewed by appellant was one Johnny Fort, an inmate at Union Correctional Institution.
The Union County grand jury also began an investigation of the death of Vertis Graham. A subpoena duces tecum was issued directing appellant to appear and to bring any tapes, documents or materials in his possession relating to the Graham death. Appellant's motion to quash the subpoena, heard and ruled upon by the circuit judge prior to appellant's appearance before the grand jury, was denied. Upon being questioned before the grand jury regarding the Graham death and information received by appellant from Johnny Fort regarding the death, he refused to testify, asserting a legislative privilege. The circuit judge, ruling against the asserted privilege, directed appellant to testify. When appellant continued to refuse to testify he was adjudged in contempt of court and sentenced to thirty days in the Union County jail, provided that appellant could purge himself of contempt at any time by testifying as ordered. This court stayed the execution of the sentence for contempt and ordered an expedited briefing schedule and oral argument to allow full consideration of the claim of privilege.
Appellant concedes the absence of any express constitutional or statutory provision authorizing the invocation of the privilege asserted. In this connection we note Section 90.501 of the recently adopted Florida Evidence Code which specifically provides for the non-existence of any privilege in a legal proceeding to refuse to be a witness, to disclose any matter, or produce any documents or writings, except as provided by the Code, any other statutes, or the Constitution of the United States or of the State of Florida. Neither the Code, the statutes, nor either Constitution expressly provides for a legislative privilege as claimed by appellant.
Appellant's assumptions concerning the existence of the privilege are based primarily upon premises extracted from two Florida constitutional provisions, aided by principles drawn from federal and state constitutional law dealing with inherent authority and separation of powers, and the federal constitutional "Speech or Debate Clause." Appellant argues first that inherent in the Florida Legislature's investigative function, pursuant to Article III, Section 5 of the Florida Constitution, is the ability of that body to maintain confidentiality with regard to its investigations. That provision of the Constitution is as follows:
SECTION 5. Investigations; witnesses.  Each house, when in session, may compel attendance of witnesses and production of documents and other evidence upon any matter under investigation before it or any of its committees, and may punish by fine not exceeding one thousand *515 dollars or imprisonment not exceeding ninety days, or both, any person not a member who has been guilty of disorderly or contemptuous conduct in its presence or has refused to obey its lawful summons or to answer lawful questions. Such powers, except the power to punish, may be conferred by law upon committees when the legislature is not in session. Punishment of contempt of an interim legislative committee shall be by judicial proceedings as prescribed by law.
Appellant refers us to the constitutional law principle that specific grants of power to one branch of government carry with them inherent powers which facilitate the exercise of its express powers. McCulloch v. Maryland, 17 U.S. 316, 4 L.Ed. 579 (1819); Amos v. Mathews, 99 Fla. 1, 126 So. 308 (1930). For example, although the United States Constitution contains no express provision permitting congressional investigations, the United States Supreme Court has ruled that inherent in the power of congress to legislate is the power to investigate any matter which may result in the development of future legislation. Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 471, 73 L.Ed. 938 (1928); McGrain v. Daughtery, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1926).[1] Similarly, although the United States Constitution has no separation of powers clause it is firmly established that the power of one branch of government cannot be usurped or interfered with by a different branch. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). Appellant notes, however, that the United States Constitution, unlike the Florida Constitution, does expressly provide protection to members of Congress, specifically, Article I, Section 6, clause 1, the so-called "Speech or Debate Clause."[2]
Conceding the absence from the Florida Constitution of a "Speech or Debate Clause"[3] appellant nevertheless submits that an express speech or debate clause is *516 unnecessary in Florida because of the interplay between Article II, Section 3, of the Florida Constitution, the "Separation of Powers Clause," and Article III, Section 5 (above quoted), providing for legislative investigations. Article II, Section 3 of the Florida Constitution provides:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
Appellant then urges this court to adopt what he refers to as an "expansive interpretation" of these two constitutional provisions and to conclude that the express power to conduct legislative investigations, when considered in connection with the express separation of powers doctrine embodied in the Florida Constitution, implies the ability of the legislature to refuse to disclose its findings "when necessary."[4] Appellant argues for a broad construction of Article III, Section 5, absent which, in appellant's view, the ability of the legislature to conduct its investigations would be severely diminished and legislative integrity would be disrupted by the judicial branch of government, through its grand jury.[5]
These arguments, briefly summarized above, would merit serious consideration were we called upon in this case to sanction the invocation of privileges and immunities similar to those which have been found to exist under the federal speech or debate clause. However, in the context of this case, they are not compelling.
In reaching our decision we are not called upon and do not decide the scope or even the existence of a "legislative privilege" similar to that provided to members of Congress under the speech and debate clause. There is every reason to believe that all due deference will and should be extended by the judicial branch to any properly asserted legislative claim of privilege, and it is imperative that it be kept in mind that such claims of privilege are supported by substantial authority. "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." Tenney v. Brandhove, *517 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1931); and see 72 Am.Jur.2d, States, etc., § 55. However, even assuming (without deciding) the existence of a legislative power to conduct confidential investigations and a generalized privilege on the part of a member to refuse to disclose evidence received in the course of such an investigation,[6] any such claim of confidentiality cannot override or defeat the pressing need of the criminal justice system, of which the grand jury is an integral part, for evidence of a crime alleged to have been committed in the state.
If there is one principle that emerges clearly from the now legendary "Watergate" episode, it is that even the power of the President of the United States cannot override the power of the judicial branch to compel a full disclosure of the facts in a criminal investigation. In United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the court sustained the denial, by the lower courts, of the President's motion to quash a subpoena duces tecum served upon him for production before trial of certain tapes and documents relating to conversations and meetings of the President with others. This material was being sought in connection with a pending indictment alleging violation of federal statutes by certain White House staff members. Many of the same arguments made to justify the President's refusal to comply with the subpoena are made here, notably, the asserted necessity for confidentiality of communications, and the independence of the Chief Executive flowing from the constitutional doctrine of separation of powers. While acknowledging the existence of a "presumptive privilege" for presidential communications,[7] which is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution ...," the court nevertheless ruled in favor of disclosure, stating (94 S.Ct. at 3110):
On the other hand, the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts. A President's acknowledged need for confidentiality in the communications of his office is general in nature, whereas the constitutional need for production of relevant evidence in a criminal proceeding is specific and central to the fair adjudication of a particular criminal case in the administration of justice. Without access to specific facts a criminal prosecution may be totally frustrated. The President's broad interest in confidentiality of communications will not be vitiated by disclosure of a limited number of conversations *518 preliminarily shown to have some bearing on the pending criminal cases. We conclude that when the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice. The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial.
We fully appreciate the fact that United States v. Nixon, deals with nondisclosure by a member of the executive branch, while here we deal with the legislative branch. We conclude, however, that regardless of whether the executive or legislative branch is concerned, when the controversy involves the specific issue of disclosures pertinent to a criminal trial or investigation, the principles upon which a decision must be based would be the same. On this point we need not speculate, however, for it is clear from the court's decision in Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), decided prior to the Nixon case, that the protections afforded to members of the legislative branch, i.e., Congress, under the speech or debate clause does not extend to investigations concerning third-party crime.[8] We apply the holdings of these cases to the issues before us, although they are based on federal, not state law, because we can conceive of no reason, and indeed none has been presented, why the same principles would not be applicable on the state level to an issue so fundamental as the need for a full disclosure of all evidence relating to criminal acts. Significantly, appellant's brief does not cite either Nixon or Gravel, nor does appellant's reply brief attempt to distinguish, or even mention, either case, although cited by appellee.
Finally, appellant's reliance upon Kirk v. Baker, 229 So.2d 250 (Fla. 1969), in support of his plea for an "expansive" interpretation of the Florida Constitution so as to imply the privilege he seeks to invoke is unavailing. The Kirk case held that, under the facts presented, the Governor and his subordinate agent were immune from the attempted assertion of jurisdiction and control of their actions by way of contempt proceedings instituted by the Criminal Court of Record of Dade County. Appellant's brief erroneously refers to Judge Baker as a "circuit court judge," although he was actually a judge of the Criminal Court of Record, a factor which, from our reading of the entire opinion, may have been of considerable significance. Appellant has also overlooked the court's observation that although the Governor was "cloaked with immunity" as to the actions of the court, "the proper forum for such charges is the House of Representatives ..., or a grand jury" (229 So.2d at 252, emphasis supplied). In a footnote to the opinion the court observed that both the Governor and his subordinate did appear before a grand jury, which took no action. Footnote 11 of the opinion (Id. at 249) cites numerous cases dealing with limitations or restraints upon judicial intervention with respect to a Governor's exercise of administrative, *519 discretionary or "political" functions, none of which are pertinent to the case before us. However, in the interest of a "workable government," with "separateness but interdependence, autonomy but reciprocity"[9] as to each of its branches, we commend to those concerned (including ourselves) the observation by Mr. Justice Drew in Kirk, speaking with reference to the difficulty of finding relevant authorities on the subject (Id. at 252-253):
... Unquestionably the dearth of authority is occasioned by the fact that the respective branches of government in our country have throughout our history assiduously avoided any encroachment on one another's authority. In those few instances where difficult cases have arisen, each branch has had enough foresight and respect for the orderly functioning of the governmental processes to avoid a confrontation.
The judgment appealed is AFFIRMED.
MILLS and ERVIN, JJ., concur.
NOTES
[1] In McGrain, discussing the policy considerations requiring a finding of implied investigatory powers, the court said: "A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; ..." The court further observed that at the time the Constitution was adopted the power of inquiry, with enforcing process, "... was regarded and employed as a necessary and appropriate attribute of the power to legislate  indeed, was treated as inhering in it...." (273 U.S. at 175, 47 S.Ct. at 329).
[2] The "Speech or Debate Clause" of Article I, Section 6, Constitution of the United States, provides:

The senators and representatives shall receive a compensation for their services, to be ascertained by law, and paid out of the Treasury of the United States. They shall in all cases except treason, felony, and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to and returning from the same; and for any speech or debate in either House, they shall not be questioned in any other place.
In United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), the court found from the history of the clause that it was not primarily intended to avoid private suits, but rather, "to prevent intimidation by the executive and accountability before a possibly hostile judiciary." (Id. at 181, 86 S.Ct. at 755). For a more recent discussion of the history, purpose and rationale underlying the clause see United States v. Gillock, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980). It has been held, however, that the Speech or Debate Clause of the United States Constitution is not applicable to state legislatures. Lake Country Estates v. Tahoe Regional Planning Agency, 440 U.S. 391, 404, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979).
[3] Appellant's brief informs us that forty-three State Constitutions contain provisions conferring a speech or debate privilege upon state legislators, and another five specifically exempt legislators from arrest during a legislative session, but do not provide a speech or debate privilege. Only the Florida and North Carolina Constitutions confer no constitutional protection upon members of the legislature. The State's brief informs us that thirty-nine states have a separation of powers clause in their State Constitutions, yet many of those also have explicit legislative privilege clauses, so that apparently as to states having both it was not considered that the "separation of powers" clause implied the existence of a speech or debate clause. It is also noted that Florida's 1865 Constitution contained a speech and debate clause in language substantially similar to that found in the United States Constitution; however, the clause was omitted from the 1868, 1885, and the current (1968) Florida Constitutions.
[4] The question of when it is "necessary" for the legislature to refuse to disclose its findings clearly raises a question of law and, as firmly reaffirmed by the court in United States v. Nixon, 418 U.S. 683, 704, 94 S.Ct. 3090, 3105, 41 L.Ed.2d 1039 (1974), it is the province and duty of the judicial branch to "say what the law is." However, the question also implies the need for a "balancing" process, much as undertaken by the court in United States v. Nixon, supra, and, in another context, by the Florida Supreme Court in Morgan v. State, 337 So.2d 951 (Fla. 1976).
[5] Appellant's brief notes the absence of any express Florida constitutional provision "authorizing the actions of the grand jury in question." This somewhat casual reference, although not pursued or argued to any extent, suggests the existence of some doubt or confusion as to the exact place of the grand jury in matters of this kind. We see no reason for doubt or confusion.

"... A grand jury is an agency of the state, and a part of its judicial system. It has been variously referred to as a coordinate branch of the judiciary, and as an arm, appendage, or adjunct of the circuit court. In essence, it is a creature of the court since it cannot constitute itself on its own initiative but can act as a grand jury, in accordance with the law, only when summoned, impaneled, and convened by the court... ."
15 Fla. Jur., Grand Jury, § 2, quoted in In Re: Grand Jury Investigation, Frank Cobo, Movant, 287 So.2d 43 (Fla. 1973). Since the Florida grand jury system is derived from the common law, except as otherwise modified, the 1968 revision of the Florida Constitution eliminating authorization for a grand jury as previously contained in Section 10, Declaration of Rights, Florida Constitution of 1885, F.S.A., has no effect upon the existence or validity of the grand jury system. Portee v. State, 253 So.2d 866 (Fla. 1971); and Reed v. State, 267 So.2d 70 (Fla. 1972). See, additionally, Section 2.01, Florida Statutes, declaring the common and statute laws of England as of July 4, 1776, as the law of this state, where not inconsistent with the Constitution and laws of the United States and the acts of the legislature of this state. See further, Article I, Section 15, Florida Constitution, 1968, recognizing the institution of the grand jury, although without provisions as to its constitution, powers or duties, in the provision "(a) no person shall be tried for capital crime without presentment or indictment by a grand jury... ."
[6] No statute or rule provides for confidential hearings or investigations by the legislature. Rule 6.25, The Rules Governing The Florida House of Representatives (1980-1982) provides: "6.25  Open Meetings. All meetings of all committees shall be open to the public at all times, subject always to the authority of the presiding officer to maintain order and decorum."

Further, as previously noted in this opinion, Section 90.501 of the Florida Evidence Code mandates a finding of no such privilege of non-disclosure. "Because of the key role of the testimony of witnesses in the judicial process, courts have historically been cautious about privileges." United States v. Nixon, 418 U.S. 683, 709, footnote 18, 94 S.Ct. 3090, 3108, fn. 18, 41 L.Ed.2d 1039. As recently restated in Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972), and again in Nixon, "... the public ... has a right to every man's evidence, except for those persons protected by a constitutional, common-law, or statutory privilege, ..." (citations omitted). We are not, however, insensitive to the need for freedom of communication, which often means confidentiality and freedom from compelled disclosure, such as it is accorded to judicial deliberations. This has been translated, as to Presidential communications, by the Nixon court, as the freedom "... to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." United States v. Nixon, 418 U.S. at 708, 94 S.Ct. at 3107.
[7] The Nixon case drew a clear distinction between the "presumptive privilege" based upon the generalized need for confidentiality of high level communications and the privilege absolute, or nearly so, as to communications relating to military, diplomatic or sensitive national security secrets.
[8] Referring to the speech and debate clause, the Gravel opinion states (408 U.S. at 622, 92 S.Ct. at 2625):

... Neither does it immunize Senator or aide from testifying at trials or grand jury proceedings involving third-party crimes where the questions do not require testimony about or impugn a legislative act... * * * * *
But the clause has not been extended beyond the legislative sphere... . Id at 624, 92 S.Ct. at 2626.
Legislative acts are not all-encompassing. The heart of the Clause is the speech or debate in either house. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which members participate in committee and house proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. As the court of appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either house, but only "when necessary to prevent indirect impairment of such deliberations." (citation omitted) Id. at 625, 92 S.Ct. at 2627.
[9] Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. at 635, 72 S.Ct. at 870, quoted in United States v. Nixon, 418 U.S. at 707, 94 S.Ct. at 3107.