PADOVANO, J.
 

 The issue before the court is whether a member of the Florida House of Representatives and his aide are entitled to claim legislative privilege as a ground for refusing to testify in a civil case. A legislative privilege existed under the common law, and we conclude that it continues to apply in Florida by general legislation adopting the common law. We also conclude that a legislative privilege is implicit in the separation of powers provision of the Florida Constitution. Because the testimony to be given in this case is within the scope of the privilege, we hold that the subpoenas at issue must be quashed.
 

 The controversy over the existence of a legislative privilege arose from two tax cases, both of which are pending in the circuit court for Leon County. In these cases, Expedia and other online travel companies filed complaints against Bro-ward County and Osceola County to challenge the assessment of tourist development taxes. The counties filed counterclaims alleging, among other things, that the travel companies had evaded their obligations to pay the taxes.
 

 In the course of related tax litigation in Georgia, Expedia was ordered to produce certain internal documents, including written communications prepared by its law firm and its accountants. These documents were confidential but they were disclosed to opposing counsel in the Georgia
 
 *520
 
 litigation under a protective order. Subsequently, the lawyer for Broward County came into possession of the documents and sought to use them as evidence in the Florida cases. The trial court ruled that the documents were privileged and that they would not be admissible in evidence, in the absence of a showing that Expedia had waived the privilege.
 

 Meanwhile, the Florida Legislature was considering a bill that would have afforded favorable tax treatment to hotel bookings made by Expedia and other online travel companies. Rick Kriseman, a member of the Florida House of Representatives, opposed the bill. The lawyer for Broward County provided Representative Kriseman with the Expedia documents that were to remain confidential under the terms of the Georgia protective order. Representative Kriseman then forwarded the documents to all of the members of the Florida House of Representatives and made them available, as well, to certain members of the press.
 

 Following the dissemination of the documents, the lawyers for Expedia obtained subpoenas directing Representative Krise-man and his aide, David Flintom, to appear for depositions. They wanted to ask these two men how they obtained the documents. The Florida House of Representatives moved to quash the subpoenas on the ground that Representative Kriseman and his aide were protected by legislative immunity. Expedia argued that the testimony to be elicited was necessary to prove that it had not provided the documents independently of the lawyer for Broward County, and thereby to establish that it had not waived the privilege protecting the documents.
 

 The trial court denied the motion to quash in part and held that the depositions could go forward on a limited basis. The court ruled that the lawyers for Expedia could ask Representative Kriseman and Mr. Flintom whether Expedia or any of its agents had independently provided the documents at issue. In that event, the lawyers could ask Representative Krise-man and Mr. Flintom what they had done with the documents once they received them. The court emphasized the narrow scope of the permissible inquiry and stated that no questions could be asked pertaining to the thoughts, opinions, or legislative activities of the witnesses.
 

 The House of Representatives filed a petition for writ of prohibition in this court on behalf of Representative Krise-man and his aide, to prevent the trial court from going forward with the depositions. We treat the petition for writ of prohibition as an appeal from a final order.
 
 See
 
 Fla. R.App. P. 9.040(c) (stating that “[i]f a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought”).
 

 Prohibition does not lie if the party seeking relief has an adequate remedy by appeal.
 
 See Sparkman v. McClure,
 
 498 So.2d 892 (Fla.1986);
 
 Bondurant v. Geeker,
 
 499 So.2d 909 (Fla. 1st DCA 1986). The order compelling discovery in this case is final and therefore appealable because it adjudicates the legal rights of nonparties and because it otherwise meets the general test of finality. An order compelling a party to provide discovery is not ordinarily subject to immediate appellate review, because the issues can be addressed on appeal from the final judgment. However, the litigants seeking relief in this court are not parties to the action pending in the lower court and they will have no opportunity to appeal the final judgment. The litigation will continue between the travel companies and the counties, regardless of the outcome of this proceeding, but as to Representative Kriseman and his aide, the order is final.
 

 
 *521
 
 Our conclusion that the order is appeal-able is directly supported by the precedent set in
 
 Calderbank v. Cazares,
 
 435 So.2d 377 (Fla. 5th DCA 1983). There, the Fifth District Court of Appeal held that a pretrial order compelling a nonparty to provide discovery was reviewable by appeal as a final order and that it was not necessary to resort to the discretionary remedy of certiorari, as would be the case if the order had been entered against one of the parties. The court explained that the subpoena initiated a proceeding that was distinct from the underlying action between the parties. Thus, the court concluded that the order compelling discovery was a final order to the extent that it fully resolved the issue affecting the nonparty.
 

 This court reached the same result in
 
 Transcall America, Inc. v. Butterworth,
 
 604 So.2d 1253 (Fla. 1st DCA 1992), albeit for a slightly different reason. The discovery order at issue in that case arose from the issuance of an investigative subpoena and not in the course of litigation between other parties. We concluded that the proper remedy was an appeal but suggested that certiorari would be appropriate for an order entered in an ongoing proceeding. As we explained, “An order which compels compliance with a subpoena in an
 
 ongoing judicial proceeding,
 
 however, is a non-final order and a
 
 party
 
 seeking relief from such an order would have to petition for a writ of certiorari.”
 
 Id.
 
 at 1254 (emphasis added). This was a reference to a discovery order entered against a party to an ongoing proceeding.
 
 See, e.g., City of Williston v. Roadlander,
 
 425 So.2d 1175 (Fla. 1st DCA 1983);
 
 but see Corry v. Meggs,
 
 498 So.2d 508 (Fla. 1st DCA 1986). Only then would it be proper to ask if the party seeking review by certiorari would have an adequate remedy by appealing the final judgment.
 

 In the present case, there is no ongoing proceeding between the parties to the lawsuit and the individuals who have been ordered to provide discovery. As to these individuals, the order is final.
 
 See Smith v. State,
 
 902 So.2d 179 (Fla. 3d DCA 2005) (holding that an order imposing sanctions against an attorney for one of the parties in a pending case is final and therefore immediately appealable by the attorney). Based on the holding in
 
 Calderbank
 
 and our own decision in
 
 Transcall,
 
 we conclude that the order denying the motion to quash is reviewable by appeal.
 

 We begin our analysis on the merits of the appeal by observing that the Florida courts have not yet directly held that a member of the state legislature is entitled to claim a testimonial privilege. The subject was discussed in
 
 Girardeau v. State,
 
 403 So.2d 513 (Fla. 1st DCA 1981) and
 
 City of Pompano Beach v. Swerdlow Lightspeed Management Co., LLC,
 
 942 So.2d 455 (Fla. 4th DCA 2006), but in each of those cases the court stopped short of holding that a legislative privilege exists. In
 
 Girardeau,
 
 the court concluded that it was not necessary to recognize the existence of such a privilege, because it could not be asserted in any event to withhold information from a grand jury investigating a crime. And the court declined to reach the issue on the merits in
 
 Swerdlow,
 
 concluding that it had been presented prematurely.
 

 Although the issue has not been squarely addressed in Florida, there is ample authority in American law for the proposition that a member of the legislative branch has a right to assert a legislative privilege. The testimonial privilege that protects a legislator from the command of a subpoena issued in a civil case is closely related to the immunity that protects a legislator from civil liability. These protections are based on the same
 
 *522
 
 policy considerations. As we shall explain, the privileges and immunities afforded to all government officials, including those who serve in the legislative branch, arise from the common law.
 

 The principle of legislative immunity was so well established in English and American law that it was incorporated into the United States Constitution. In the leading case of
 
 Tenney v. Brandhove,
 
 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the Court held that Article I, section 6 of the United States Constitution creates a form of legislative immunity. The applicable portion of this article, popularly known as the “Speech or Debate Clause,” provides in pertinent part that “in all Cases, except Treason, Felony and Breach of the Peace, [senators and representatives shall] be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.”
 

 The
 
 Tenney
 
 case dealt with immunity from suit, but the Supreme Court subsequently held in
 
 Gravel v. United States,
 
 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), that the Speech or Debate Clause also creates a testimonial privilege. In that case, a United States Senator was subpoenaed before a grand jury to give information relating to classified documents known as the Pentagon Papers. One of the matters under consideration by the grand jury was whether the senator had leaked the documents to a newspaper. The Court acknowledged the existence of the testimonial privilege but concluded that the senator was not entitled to rely on it under the facts of the case, because the subject matter of the inquiry — whether he had leaked the documents to the press— was not within the legitimate sphere of congressional activities and because the privilege cannot be used, in any event, as a shield against the commission of a crime.
 

 The Florida Constitution does not include a version of the Speech or Debate Clause, but the decisions in
 
 Tenney
 
 and
 
 Gravel
 
 are significant to our analysis, nonetheless. These decisions illustrate that the Speech or Debate Clause is based on legislative privileges and immunities that are firmly rooted in the common law. As the Supreme Court explained in
 
 Ten-ney,
 
 “The privilege of legislators to be free from arrest or civil process for what they say or do in legislative proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries.”
 
 Tenney,
 
 341 U.S. at 372, 71 S.Ct. 783.
 

 The Speech or Debate clause is limited by its terms to members of Congress, yet the court in
 
 Tenney
 
 applied the underlying common law principles to conclude that members of the California Legislature were immune from liability in a civil suit. Subsequently, the Court extended legislative immunity to local legislative officials,
 
 see Bogan v. Scott-Harris,
 
 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), and to non-legislators legitimately engaged in a legislative function.
 
 See Supreme Court of Virginia v. Consumers Union of the United States,
 
 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).
 

 The principles that give rise to the need to immunize legislators are the same as those that justify immunity for members of other branches of government. Judges are immune from suit,
 
 see Pierson v. Ray,
 
 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967);
 
 Mireles v. Waco,
 
 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991), and judicial immunity, like legislative immunity, is based on principles developed in the common law.
 
 See Forrester v. White,
 
 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Our supreme court noted in
 
 Office of State
 
 
 *523
 

 Attorney, Fourth Judicial Circuit of Florida v. Parrotino,
 
 628 So.2d 1097, 1099 (Fla.1998), that the English courts had held that “absolute immunity was conferred upon judges acting within their lawful powers, even where the actions allegedly involved serious misconduct,” and that this principle “was directly imported into the law of the United States as the common-law basis for judicial immunity.”
 

 This common law principle is most often used to immunize a judge from liability in civil litigation, but it has also been used to support the proposition that a judge cannot be compelled to testify about his or her thought process in making a decision in a case.
 
 See State v. Lewis,
 
 656 So.2d 1248 (Fla.1994) (stating that a judge may not be examined as to his or her thought process in making a decision);
 
 Department of Highway Safety and Motor Vehicles v. Marks,
 
 898 So.2d 1063 (Fla. 5th DCA 2005) (holding that a hearing officer acting in a judicial capacity was entitled to claim judicial immunity and could not be compelled to give testimony about his mental process in deciding a case).
 

 We can draw the same analogy to the protections afforded to public officials in the executive branch of the government, as these protections are also based on the common law. In
 
 Spalding v. Vilas,
 
 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), the court held that the postmaster general was immune from civil suit. Drawing on principles of immunity developed in English cases at common law, the Court concluded that it is necessary to protect executive branch officials in order to ensure the proper functioning of the government. These common law principles evolved into the modern rules of law pertaining to absolute immunity,
 
 see Nixon v. Fitzgerald,
 
 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), and good faith immunity.
 
 See Mitchell v. Forsyth,
 
 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 

 Additionally, as with their counterparts in the judiciary and the legislature, public officials in the executive branch are entitled to a testimonial privilege.
 
 See United States v. Nixon,
 
 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (recognizing the existence of executive privilege but holding that it is not absolute, in that it cannot be asserted to shield evidence of a crime);
 
 Cheney v. United States Dist. Ct. for the Dist. of Columbia,
 
 542 U.S. 367, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004);
 
 Dep’t of Health & Rehab. Servs. v. Brooke,
 
 573 So.2d 363 (Fla. 1st DCA 1991) (holding that the head of a state administrative agency was protected by executive privilege and could not be forced to appear in court and answer questions about funding of the agency).
 

 It is clear from these authorities that the privileges and immunities protecting all public officials, including members of the legislature, arise from the common law. The significance of this point is simply this: if legislative privileges and immunities existed under the common law, they continue to exist, apart from specific constitutional provisions like the Speech or Debate Clause, to the extent that a state continues to recognize the common law.
 

 Section 2.01, Florida Statutes, provides in material part that “[t]he common law and statute laws of England which are of a general and not a local nature ... are declared to be of force in this state; provided, the said statutes and common law [are] not inconsistent with the Constitution and laws of the United States and the acts of the Legislature of this state.” It follows from this language that if legislative immunity existed under the common law of England, it continues to exist in Florida. Because we know of no law abrogating the common law on this point, we conclude
 
 *524
 
 that Florida legislators continue to enjoy legislative immunity under state law.
 

 As an independent ground for our decision, we conclude that legislative privilege exists by virtue of the separation of powers provision of the Florida Constitution. This constitutional issue is closely related to the common law issues we have discussed. One purpose of common law legislative immunity was to protect the independence of the legislature. Another purpose was to “reinforce the separation of powers” between the branches of government.
 
 Fowler-Nash v. Democratic Caucus of Pa. House of Representatives,
 
 469 F.3d 328, 331 (3d Cir.2006).
 

 Article II, section 3 of the Florida Constitution states, “The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.” The importance of this provision cannot be overstated. Our supreme court described the separation of powers as “the cornerstone of American democracy.”
 
 Bush v. Schiavo,
 
 885 So.2d 321, 329 (Fla.2004). In the
 
 Schiavo
 
 case, the court also stated that Florida has traditionally applied a “strict separation of powers doctrine.”
 
 Id.
 
 at 329. Strict enforcement of the provision is necessary in part to ensure that one branch of the government does not encroach on powers vested exclusively in another.
 

 We suggested in
 
 Girardeau
 
 that the separation of powers provision in Article II, section 3 would support a claim of legislative privilege.
 
 Girardeau,
 
 403 So.2d at 516. This reasoning is legally sound, and we now adopt it as part of the basis for this decision. The power vested in the legislature under the Florida Constitution would be severely compromised if legislators were required to appear in court to explain why they voted a particular way or to describe their process of gathering information on a bill. Our state government could not maintain the proper “separation” required by Article II, section 3 if the judicial branch could compel an inquiry into these aspects of the legislative process.
 

 Because the right to assert a legislative privilege arises from the state constitution as well as the common law, it is among those privileges that exist independently of the Florida Evidence Code. Section 90.501, Florida Statutes limits the testimonial privileges that are available to those that are listed in the Evidence Code. Legislative privilege is not listed in the Code but it falls within the exception for those privileges that “arise from the Constitution of the United States or of the State of Florida.”
 
 See
 
 § 90.501, Fla. Stat. Because it arises from the separation of powers provision in Article II, section 3, as we have explained, it continues to exist notwithstanding the fact that it is not among the testimonial privileges identified in the Code.
 

 Although there is no judicial precedent in Florida for legislative immunity, there is no reason why we should not now recognize that it exists. Nor do we see any reason why this form of immunity, like the others, should not also include a privilege that can be asserted against the obligation that would otherwise exist to give compelled testimony in a civil case. In
 
 Gravel,
 
 the United States Supreme Court treated legislative testimonial privilege as a necessary incident of the legislative immunity it had previously recognized in
 
 Tenney,
 
 and we believe the same logic applies here. If legislators are immune from civil liability for actions taken in the course of their legislative duties, they are also entitled to refuse to testify about the performance duties.
 

 
 *525
 
 This leads us to the question of whether the testimony to be elicited in the present case falls within the scope of the privilege. We conclude that it does. The documents that are the subject of the inquiry were acquired and distributed in the course of a debate within the House of Representatives on the merits of a pending bill. Gathering information pertaining to potential legislation and sharing it with colleagues is an essential part of the legislative process. Thus, it is clear that Representative Kriseman and his aide were performing a legitimate legislative function.
 
 See Kamplain v. Curry County Bd. of Comm’rs,
 
 159 F.3d 1248, 1251 (10th Cir.1998) (stating that the courts apply a functional test in determining whether the privilege applies). Hence, the testimony Expedia wishes to elicit is protected.
 

 Furthermore, we have little doubt that the privilege may be asserted by legislative staff members as well as the legislators themselves. The reason for affording a legislative privilege could be subverted entirely if an aide could be forced to disclose that which the senator or representative would be entitled to keep private.
 
 See Gravel,
 
 408 U.S. at 628, 92 S.Ct. 2614 (holding that the privilege applied to both the senator and his aide). It follows that Mr. Flintom is entitled to assert the privilege just as it may be asserted by Representative Kriseman.
 

 The legislative privilege we have recognized in this case is not absolute. On this point, we adhere to our decision in
 
 Girardeau
 
 that the privilege could not be used to withhold evidence of a crime. An absolute testimonial privilege is not available even to the President of the United States.
 
 See United States v. Nixon, supra
 
 The court will always have to make a preliminary inquiry to determine whether the information is within the scope of the privilege and whether the need for privacy is outweighed by a more important governmental interest.
 

 No such interest has been demonstrated in the present case. Expedia claims that it needs to ask whether the documents were provided to Representative Kriseman by any of its own agents. This is a curious question, given the fact that the parties acknowledge that the documents were in fact provided by the lawyer for Broward County. Nevertheless, Expedia claims that it is necessary to prove that it did not provide the documents independently, so that it can refute a claim that it had waived the attorney-client privilege with respect to the documents. The problem with this claim is that the burden of proving a waiver is on the counties. Expedia is attempting to refute a fact that has not yet been proven and, as it appears from this record, may never be proven.
 

 In summary, we hold that Representative Kriseman and Mr. Flintom are entitled to assert a legislative privilege. Because the questions to be asked of them regarding the documents they received and the actions they took in connection with a bill pending in the legislature are within the scope of the privilege, they cannot be compelled to testify. For these reasons, we reverse with instructions to quash the subpoenas.
 

 Reversed.
 

 WOLF and MARSTILLER, JJ., concur.