# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

VIOLA RUSSELL,

Appellant,

v.

LINDA BURNELL MELLS,

Appellee.

No. 2D2024-1560

_____

December 10, 2025

Appeal from the Circuit Court for Pinellas County; Cynthia J. Newton, Judge.

Viola Russell, pro se.

Sara Evelyn McLane, Largo, for Appellee.

LUCAS, Chief Judge.

This opinion addresses two issues. The first, a relatively straight-forward procedural error, requires reversal of the final judgment in favor of appellee, Linda Mells, based upon the order dismissing appellant, Viola Russell's complaint with prejudice. The second, an apparent lapse of professional conduct on the part of appellee's counsel, requires referral to the Florida Bar.

I.

Ms. Russell and Ms. Mells have an ongoing dispute over Ms. Mells' actions vis-à-vis Ms. Russell's aged aunt, Viola Cain (to avoid confusion, we will refer to Viola Cain as Aunt Viola). Apparently, Ms. Mells, a retired nurse practitioner and hired caregiver for Aunt Viola, had received a power of attorney to act on behalf of Aunt Viola and, upon Aunt Viola's passing, was appointed as personal representative of Aunt Viola's estate.

Proceeding pro se, Ms. Russell filed a civil complaint against Ms. Mells. The complaint was rambling, and it sought unspecified damages arising out of Ms. Mells' alleged defamation of Ms. Russell, the filing of an injunction petition against Ms. Russell, and Ms. Mells' interactions with Aunt Viola.[1] Through counsel, Ms. Mells filed a motion to dismiss the complaint for failure to state a cause of action. At Ms. Mells' request, the court granted the motion without a hearing and allowed Ms. Russell five days to amend her complaint.

Ms. Russell did so but then, ten days later, submitted another amended complaint. The only difference between the two versions was that the latter included page numbers. Ms. Mells never objected to the filing of this unauthorized third complaint, *accord* Fla. R. Civ. P. 1.190(a), so we will refer to the page-enumerated amended complaint as the "second amended complaint." The second amended complaint was titled "Amended Complaint for Defamation and I.I.E.D. [Intentional Infliction of Emotional Distress]." Ms. Mells filed a motion to dismiss the second amended complaint, again arguing that it failed to state a cause of action

---

[1] Ms. Russell filed various other documents in conjunction with her pleadings, such as a "Final Notice of Intent to File Lawsuit, and a very reasonable Pre-Offer to Settle," all of which read much like her initial complaint.

under Florida law. Ms. Mells' motion contended that the second amended complaint's allegations were all "conclusory" and that "[t]here is a probate case pending in Pinellas County Case #22-9245 ES 3," over which the civil court did "not have jurisdiction." Along with the motion to dismiss, Ms. Mells also filed a motion to recover her attorney's fees and costs pursuant to section 57.105, Florida Statutes (2024).

Before that motion was heard, Ms. Russell filed a motion to amend her second amended complaint. Her motion included a proposed "second (or third) amended complaint" (we will refer to it as her third amended complaint), and it differed substantially from any of the prior iterations. The proposed complaint comprised thirty-eight numbered paragraphs of relatively concise statements of alleged facts, included three claims that are recognized under Florida law (tortious interference with an expectancy or inheritance interest, intentional infliction of emotional distress, and "defamation/slander per se"), sought monetary and equitable relief, and concluded with a demand for a trial by jury. Ms. Russell's motion to amend acknowledged the prior technical deficiencies of her earlier pleadings but noted that Florida law "[r]ecognizes that leave of Court granting a motion to file an amended complaint should be freely granted." Her motion went on to argue that

> [i]n the instant matter, no trial date has been set and the only hearing that has been scheduled will occur on April 30, 2024. The Defendant will not be prejudiced by the Court's granting the Plaintiff's Motion for Leave to Amend her complaint because any new claims now presented in the attached Second [sic] Amended Complaint are based on the same set of facts as the original complaint and does not suffer from the so-called pleading deficiencies alleged by the Defendant.

The court convened a hearing on April 30, 2024, and entered an order on June 5, 2024, dismissing Ms. Russell's second amended complaint with prejudice for failure to state a cause of action. Effectively,

3

the court also denied Ms. Russell's motion for leave to file her proposed third amended complaint. Without issuing any findings, the court's order also granted Ms. Mells' sanctions motion, reserving jurisdiction to determine the amount of attorney's fees and costs.

Ms. Russell timely initiated this appeal. We have jurisdiction to review the circuit court's order dismissing her case with prejudice. *See* art. V, § 4(b)(1), Fla. Const.

## II.

"[T]his court reviews an order dismissing a complaint with prejudice using a de novo standard of review, because a motion to dismiss examines the legal sufficiency of the complaint, not factual determinations." *Thews v. Wal-Mart Stores E., LP*, 210 So. 3d 723, 724 (Fla. 2d DCA 2017) (citing *Neapolitan Enters. LLC v. City of Naples*, 185 So. 3d 585, 589 (Fla. 2d DCA 2016)). Because the circuit court's dismissal order effectively denied Ms. Russell's pending motion for leave to amend, we further consider whether that denial constituted an abuse of discretion. *Drish v. Bos*, 298 So. 3d 722, 723 (Fla. 2d DCA 2020) ("We review the denial of a motion for leave to amend a complaint under an abuse of discretion standard." (citing *Saidi v. Saqr*, 207 So. 3d 991, 992 (Fla. 5th DCA 2016))).

## III.

Although Ms. Russell's prior attempts to plead a proper civil complaint fell short of the mark, as she pointed out in her motion for leave to amend to file her third amended complaint, her case was still at a relatively early stage. No trial had been set, no motion for summary judgment had been filed. From our review of the record, it doesn't appear that either party had engaged in any discovery. At the time the circuit court dismissed Ms. Russell's complaint with prejudice, the court

4

had addressed the sufficiency of her prior pleadings on only one prior occasion, and that one time had been without the benefit of a hearing.

Our court has summarized:

> "The Florida Rules of Civil Procedure encourage a policy of liberality in allowing litigants to amend their pleadings, especially prior to trial . . . . Absent exceptional circumstances, motions for leave to amend should be granted, and refusal to do so constitutes an abuse of discretion." *Drish*, 298 So. 3d at 723–24 (ellipsis in original) (quoting *Morgan v. Bank of N.Y. Mellon*, 200 So. 3d 792, 795 (Fla. 1st DCA 2016)). "A trial court's refusal to permit an amendment of a pleading is an abuse of discretion unless it is clear that . . . (1) the amendment would prejudice the opposing party, (2) the privilege to amend has been abused, or (3) the amendment would be futile." *Cobbum v. CitiMortgage, Inc.*, 158 So. 3d 755, 757 (Fla. 2d DCA 2015) (quoting *Laurencio v. Deutsche Bank Nat'l Tr. Co.*, 65 So. 3d 1190, 1193 (Fla. 2d DCA 2011)). "[C]ourts should resolve all doubts in favor of allowing the amendment of pleadings to allow cases to be decided on their merit." *Sorenson v. Bank of N.Y. Mellon as Tr. for Certificate Holders CWALT, Inc.*, 261 So. 3d 660, 663 (Fla. 2d DCA 2018) (quoting *Laurencio*, 65 So. 3d at 1193).

*CHHS Hosp. Co. v. Harmon*, 381 So. 3d 679, 682 (Fla. 2d DCA 2024) (alterations in original); *see also Drish*, 298 So. 3d at 724 ("[A]ll doubts should be resolved in favor of allowing the amendment and refusal to do so generally constitutes an abuse of discretion unless it clearly appears that [1] allowing the amendment would prejudice the opposing party, [2] the privilege to amend has been abused, or [3] amendment would be futile." (second, third, and fourth alterations in original) (quoting *Saidi v. Saqr*, 207 So. 3d 991, 992 (Fla. 5th DCA 2016))).

In her answer brief, Ms. Mells does not claim any prejudice would result from the proposed amendment. Although she notes that "on two separate occasions, the trial court found that the Complaint as drafted lacked legal sufficiency that stated a cause of action," she does not

5

maintain that the proposed third amended complaint would have constituted an abuse of the privilege to amend. And she makes no argument at all about the proposed third amended complaint's sufficiency or whether it would be "futile" to permit its filing and consideration. *See PWBC, LLC v. Palm Vista Homeowners Ass'n*, 417 So. 3d 4, 10 (Fla. 4th DCA 2025) ("Considering the policy in liberally granting leave to amend, the record reveals no valid reasons for denying the amendment motion.").

In our view, under these facts, Ms. Russell should have been given another opportunity to amend her complaint, and her motion for leave to file her proposed third amended complaint should have been granted. *See Harmon*, 381 So. 3d at 682; *Fayad v. Univ. of Miami*, 307 So. 3d 114, 118 (Fla. 3d DCA 2020) (citing *Marquesa at Pembroke Pines Condo. Ass'n v. Powell*, 183 So. 3d 1278, 1279–80 (Fla. 4th DCA 2016)). Accordingly, we reverse the order below dismissing her amended complaint with prejudice.[2]

---

[2] Ms. Russell also challenges the circuit court's order granting Ms. Mells' entitlement to attorney's fees and costs. Her argument is two-fold: first, she maintains that the dismissal of her complaint with prejudice was erroneous and, therefore, cannot support a section 57.105 sanction order; second, she argues that the court's failure to include any express findings in the sanction order requires reversal. *See Soto v. Carrollwood Vill. Phase III Homeowners Ass'n*, 326 So. 3d 1181, 1185 (Fla. 2d DCA 2021) ("A fee award as a sanction under section 57.105(1) requires the circuit court to make detailed findings on the basis of its award." (citing *Jean-Pierre v. Glaberman*, 192 So. 3d 613, 613 (Fla. 4th DCA 2016))). Because the court's order only determined entitlement to attorney's fees and costs, but did not award an actual amount, we are without jurisdiction to review that aspect of the court's ruling, and so we must dismiss that part of the appeal. *See Johnson Tr. of Krej Irrevocable Tr. No. 7 v. Cliche Piano Bar & Pool Lounge, LLC*, 290 So. 3d 158, 159 (Fla. 2d DCA 2020) ("We dismiss the portion of this appeal wherein appellant challenges the portion of the order granting appellee's motion for

IV.

We must now turn to an issue concerning appellee's briefing in this case.  Ms. Mells' attorney, Sara Evelyn McLane, filed an answer brief that contained three case citations.  Only two of those citations were to actual cases published by the Southern Reporter; and both of those cases were misquoted in the answer brief (that is, the brief attributed quoted text from one case that was actually found in another).  The third citation appears in the following paragraph of the answer brief:

> In Cade v. Roberts, 403 So. 2d 516 (Fla. 5th DCA 1981) *"A Motion to dismiss admits all well-pleaded facts in the complaint and the court must view those facts in a light most favorable to the plaintiff.  The motion should not be granted unless the plaintiff can prove no set of facts in support of the claim* ".

No such case exists.  In fact, our research of Florida law has revealed no reported case by the name of "Cade v. Roberts" anywhere.  Page 516 of Volume 403 of the Southern Reporter (Second Series) is, in fact, part of the *Girardeau v. State* opinion from the First District, an interesting case about a criminal contempt proceeding against a member of the Florida House of Representatives who had refused to answer questions before a grand jury, but which had nothing whatsoever to do with motions to dismiss or civil pleading practice.

---

attorneys' fees pursuant to section 57.105, Florida Statutes (2018), as that portion of the order is nonfinal and nonappealable." (citing *SP Healthcare Holdings, LLC v. Surgery Ctr. Holdings, LLC*, 208 So. 3d 775, 781 (Fla. 2d DCA 2016))); *Bois v. Bois*, 351 So. 3d 40 (Fla. 4th DCA 2022) ("Appellant challenges two portions of the trial court's order on appeal. We dismiss as to appellant's argument that the trial court erred in granting appellee's motion for attorney's fees pursuant to section 57.105, Florida Statutes (2020).  Because the trial court's order determined only entitlement to attorney's fees, that portion of the order is nonfinal and nonappealable.").  Of course, in light of our reversal, the circuit court is free to reconsider this ruling on remand.

Because the "Cade v. Roberts" case citation appeared to have been "hallucinated" (most likely by a generative artificial intelligence program)[3] and because the other two case citations contained misquotations, we issued an order to show cause to appellee's counsel. In our order, we directed counsel to file a written response explaining how these case citations and quotations were generated. We further warned that the response should also show cause as to why sanctions shouldn't be imposed.

In her response, Attorney McLane stated that the three case citations "were researched via computer generated searches" and acknowledged that she "failed to fully vet these searches." With respect

---

[3] "Generative artificial intelligence (GenAI) refers to AI models, in particular those that use machine learning (ML) and are trained on large volumes of data, that are able to generate new content." *See* Generative Artificial Intelligence: Overview, Issues, and Considerations for Congress, CRS IF12426. "Large language models (LLMs) are AI systems that aim to model language, sometimes using millions or billions of parameters (i.e., numbers in the model that determine how inputs are converted to outputs). . . . GenAI models work to match the style and appearance of the underlying training data." *Id.* The phenomenon of hallucination by GenAI arises "[w]hen these models do not know an answer, they can and do make up answers that sound plausible to fill in the blanks or gaps in data." Brent J. Hoeft, *When AI 'Lies': The Legal Risks of Hallucinations*, Wis. Law., September 2025, at 39, 40. "[T]hese AI platforms look at legal briefs in their training model and then create output that *looks like* a legal brief by 'placing one most-likely word after another' consistent with the prompt it received." *In re Martin*, 670 B.R. 636, 649 (Bankr. N.D. Ill. 2025) (quoting Brian Barrett, "*You Can't Lick a Badger Twice": Google Failures Highlight a Fundamental AI Flaw*, Wired (Apr. 23, 2025, 7:44 PM), https://www.wired.com/story/google-ai-overviews-meaning/). According to one study, GenAI programs for legal research hallucinate legal authorities between seventeen and thirty-three percent of the time. *See* Varun Magesh, Faiz Surani, et al., *Hallucination-Free? Assessing the Reliability of Leading AI Legal Research Tools*, Journal of Empirical Legal Studies, 2025; 0:1–27 (March 14, 2025).

to the two misquotations, she stated that "the errors . . . were not substantive in nature and were primarily the result of miss placed [sic] quotation marks."  She conceded that the citation to "Cade v. Roberts" was "substantive but was not made for the purpose of misleading the Court."  She then noted that there was Florida case law supporting "the substance of the argument" on this point, presumably meaning that the quoted text in her brief about motions to dismiss could find support elsewhere in Florida law.[4]  Lastly, we couldn't help but notice, the signature line of counsel's response to our order to show cause appears to have been executed by someone on behalf of Ms. McLane, instead of by Ms. McLane herself.[5]

In essence, counsel has told us that her "computer generated searches" misstated the law but that she didn't mean to mislead the court when she filed those misstatements.  We will take her at her word about her intentions.  But what counsel seems to imply—that since the substance of the analysis in her brief wasn't necessarily wrong, her misstatements are not an issue we should be overly concerned about—is

---

[4] She never tells us where, and there is no text we've found in Florida law that directly matches the purported quotation she set forth in the brief.  But substantively Ms. McLane is correct.  *See Schmidt v. Thobe*, No. 2D2024-0994, 2025 WL 2524505, at *2 (Fla. 2d DCA Sept. 3, 2025) ("When ruling on a motion to dismiss, 'a trial court is confined to the four corners of the complaint, and the material allegations of the complaint must be taken as true.' " (quoting *All Ins. Restoration Servs. v. Heritage Prop. & Cas. Ins.*, 338 So. 3d 448, 449 (Fla. 2d DCA 2022))).

[5] While a delegated signature execution may not have been a legal or ethical impropriety, under these circumstances, it certainly didn't make a good impression.  In the future, our orders to show cause for these kinds of matters will specify that counsel must personally execute the written response, though that point really should not need to be stated.

simply unacceptable.  Indeed, we are deeply troubled by this brief and by this attorney's response.

The judges on this panel have, collectively, served for over fifty years as judicial officers.  We have over a hundred years of experience as members of the Florida Bar.  Before becoming appellate or trial judges, we practiced in state and federal courts in a wide variety of cases throughout the State of Florida.  None of us can recall an instance when an attorney accidentally submitted a completely fabricated case as a legal authority to a court of law—not until the recent advent of generative artificial intelligence.

Unfortunately, we're finding this problem arising more and more frequently.  Just a few months ago, our court issued an opinion referring another lawyer to the Florida Bar for similarly relying on generative artificial intelligence to essentially write his appellate brief without checking the veracity of authorities cited in that brief.  *See Clerk of Ct. & Comptroller for 13th Jud. Cir., Hillsborough Cnty. v. Rangel*, No. 2D2024-1772, 2025 WL 2486314 (Fla. 2d DCA Aug. 29, 2025).  In *Rangel*, we observed:

> [T]he dangers of relying on generative artificial intelligence have been discussed in the media, in legal publications, and in court opinions.  *See In re Amends. to Rules Regulating the Fla. Bar – Chapter 4*, 393 So. 3d 137, 138–39 (Fla. 2024) (amending the comments to specified rules in Chapter 4 and "adding a warning about the necessity to take care in using generative artificial intelligence"); *Gutierrez v. Gutierrez*, 399 So. 3d 1185, 1187–88 (Fla. 3d DCA 2024) (imposing sanctions on a pro se litigant for failing to comply with Florida Rule of Appellate Procedure 9.210(b) and for submitting a brief that included "fictitious case law"); *ByoPlanet Int'l, LLC v. Johansson*, No. 0:25-cv-60630, —— F.Supp.3d ——, ——, 2025 WL 2091025, at *7 (S.D. Fla. July 17, 2025) ("Attorneys using AI tools without checking on the accuracy of their output are responsible for the consequences of incorporating

inaccurate information into their work product." (quoting Judge Xavier Rodriguez, *Artificial Intelligence (AI) and the Practice of Law*, 24 Sedona Conf. J. 783, 784 (2023))); *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-cv-81140, 2025 WL 1440351, at *4 (S.D. Fla. May 20, 2025) (concluding that sanctions were appropriate when attorneys submitted a written response containing "a fake hallucinated case citation which allegedly supported a principle of law for which they were advocating").

2025 WL 2486314, at *2.

When a lawyer cites imaginary legal authorities to our court as if they were law, we are compelled to refer that lawyer to the Bar because of the professional rules of conduct. It doesn't take much moral imagination to understand why. As judges, we rely on attorneys to ethically represent their clients. We expect that representation to be zealous, honest, and competent. Indeed, lawyers owe the courts and their clients a duty to practice with competence and candor. *See* R. Regulating Fla. Bar 4-1.1 ("A lawyer must provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."); R. Regulating Fla. Bar 4-3.3(a)(1) ("A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ."). By signing an appellate brief, a lawyer certifies that he or she has read the document and that to the best of the lawyer's knowledge, information, and belief there are "good grounds to support the document." *See* Fla. R. Jud Admin. 2.515(d).

These ethical requirements are not excused simply because a computer program generated a faulty or misleading legal analysis. Nor is it an excuse that the attorney did not intend to mislead the court. "To

state the obvious, it is a fundamental duty of attorneys to *read* the legal authorities they cite in appellate briefs or any other court filings to determine that the authorities stand for the propositions for which they are cited." *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 912 (Cal. Ct. App. 2025); *see also Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) ("At the very least, the duties imposed by [Federal Rule of Civil Procedure 11] require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely.").

Obviously, that didn't happen when Ms. McLane filed this answer brief. Instead, counsel "fundamentally abdicated" her duty to the court and her client when she submitted this filing without verifying that the three cases cited in her brief said what she claimed they said. *See Noland*, 336 Cal. Rptr. at 912. Accordingly, it is our duty to refer this matter to the Florida Bar to proceed as it deems appropriate.

We are publishing this aspect of the case with the hope that it will remind attorneys that technological advances do not dispense with ethical obligations. Our warning in *Rangel* bears repeating:

> Efficiency, expertise, and cost savings are some of the reasons why attorneys delegate work and use technological tools such as generative artificial intelligence in representing their clients. But this case is another reminder that an attorney who does so remains responsible for the work product that is generated.

2025 WL 2486314, at *3.

Reversed in part; dismissed in part; remanded with instructions.


MORRIS and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____


Opinion subject to revision prior to official publication.

12