BENTON, C.J.,
dissenting.
I would deny the petition for writ of certiorari for failure to demonstrate material, irreparable — or, arguably, any — legally cognizable injury. “[I]f the party seeking review does not demonstrate that it will suffer material injury of an irreparable nature, then an appellate court may not grant certiorari relief from a non-appeal-able non-final order,” like Judge Lewis’s protective order in the present case. See Bd. of Trs. of Internal Improvement Trust Fund v. Am. Educ. Enters., LLC, 99 So.3d 450, 454-55 (Fla.2012) (ruling that a finding that the petitioner has “‘suffered an irreparable harm that cannot be remedied on direct appeal’ is a ‘condition precedent to invoking a district court’s certiorari jurisdiction’”) (citation omitted)). Because the petition fails to identify any harm or injury that cannot be remedied on appeal, I respectfully dissent from the court’s decision to grant certiorari relief in the present case.
To begin with, the majority opinion’s assertion that we reversed an order “[mjuch like the order in this case” in Florida House of Representatives v. Expedia, Inc., 85 So.3d 517 (Fla. 1st DCA 2012), fails to take into account an essential, procedural difference between this case and that. Expedia was a direct appeal from a final order. 85 So.3d at 520. See Fla. R.App. P. 9.030(b)(1)(A) (providing that district courts of appeal “shall review,” by appeal, “final orders of trial courts”). In contrast, the present case is before us on petition for writ of certiorari, seeking review of a non-final, non-appeal-able order. We have no business meddling in ongoing trial eourt proceedings, either in the run of cases or in the present case.
On certiorari review of a nonfinal order, the initial inquiry is whether immediate review is necessary to avert a harm or injury that cannot be undone on appeal. See AVCO Corp. v. Neff, 30 So.3d 597, 601 (Fla. 1st DCA 2010) (“To obtain certiorari relief, Petitioners must demonstrate (1) a departure from the essential requirements of law, (2) a resulting material injury for the remainder of the trial, and (3) the lack of an adequate remedy on appeal. The court is required to first determine whether Petitioners have shown an irreparable harm before determining whether the trial court departed from the essential requirements of law.” (citations omitted)). We are without jurisdiction to monitor pretrial discovery or to second guess the trial court’s discovery orders, absent a demonstrated need to prevent irremediable harm.
No such harm threatens here. Defendants in circuit court, petitioners here, filed a motion for protective order making the broad, albeit nebulous, claim “that Plaintiffs’ discovery will implicate important issues of legislative privilege” because the plaintiffs “have indicated that they will seek (i) deposition testimony of legislators and legislative staff and (ii) discovery of legislatively drawn draft redistricting plans that were never filed as bills.” But the appendix accompanying the petition establishes only that the coalition plaintiffs filed notice of taking depositions of one senator[8] and two legislative staff members “for the purpose of discovery or any other purpose for which they may be used under *130 applicable laws and rules of the State of Florida.”
The trial court granted petitioners’ motion for protective order (in part), even though the record does not indicate the respondents have so much as framed the questions to be asked on deposition. We do not know what questions would have been posed. Cf. City of Pompano Beach v. Swerdlow Lightspeed Mgmt. Co., LLC, 942 So.2d 455, 457 (Fla. 4th DCA 2006) (“In this case, the question of whether a testimonial legislative privilege protects these city officials has been presented prematurely. Respondents have not yet formulated their questions for deposition. The trial court has ruled that the questioning may not extend to matters ‘touching the legislative process.’ Under these circumstances, we find petitioners’ privilege challenge premature, and dismiss without prejudice to their right to seek relief in the event the trial court should require the answer to any questions claimed to violate a privilege.”). At this stage, it is impossible to say that any question respondents would actually have asked would be objectionable.
Cases in which the privilege against self incrimination is invoked are analogous. See Rappaport v. Levy, 696 So.2d 526, 527 (Fla. 3d DCA 1997) (“The cases which discuss the effect of a party’s claim of Fifth Amendment privilege uniformly involve situations in which the claimant has already invoked the privilege, usually at deposition.”); Schwab v. Brevard Cnty. Sch. Bd., 650 So.2d 1099, 1100 (Fla. 5th DCA 1995) (noting, on appeal of a trial court order granting the Brevard County School Board leave to take the deposition of a death row inmate, that “if Schwab wishes to seek a protective order in regard to any or all of the questions posed in the notice of January 25th, his motion in that regard must be addressed to the trial court and not to us. In the event that Schwab declines to answer any or all of the proffered questions, his refusal may give rise to a motion to compel, which again would be the initial province of the trial court. After the trial court rules on such matters as protective orders and motions to compel, those rulings may be subject to review by this court upon proper application. But we will not intercede in discovery issues before they are presented to the trial court. In the instant case there has been no objection to any specific question posed to Schwab, and no trial court ruling thereon.” (footnote omitted)).
In their petition for writ of certiorari, petitioners assert that compelled production of allegedly protected documents will result in “ ‘cat out of the bag' harm” on the theory that the invasion of a purported legislative privacy interest cannot be remedied, once documents are produced and disseminated. Our supreme court did recognize in Allstate Insurance Company v. Langston, 655 So.2d 91, 94 (Fla.1995), that “[djiscovery of certain kinds of information ‘may reasonably cause material injury of an irreparable nature.’ This includes ‘cat out of the bag’ material that could be used to injure another person or party outside the context of the litigation, and material protected by privilege, trade secrets, work product, or involving a confidential informant may cause such injury if disclosed.” (citation and footnote omitted). But there is no cat here, proverbial or otherwise. While disclosure of privileged material might cause harm in another case that — for factual reasons not present here — could not be remedied on appeal, there is no prospect of any such harm or injury in the present case.
Petitioners do not claim that disclosure of any specific document would result in irreparable harm, and complain of no ruling as to any specific document below. *131 The trial court simply ordered the petitioners to “produce all documents requested which do not contain ‘subjective’ information” — information described as reflecting “the subjective thought processes of legislators and the confidential communication between them and between legislators and their staff’ — and to “schedule an in camera review as to any disputed documents.” See Gaton v. Health Coal., Inc., 774 So.2d 59, 60 (Fla. 3d DCA 2000) (denying petition for writ of certiorari as premature because “the special master has simply ordered petitioners to produce the documents directly to the special master for an in camera inspection” and no production beyond that had yet been ordered).
It is only necessary to examine the trial court’s order to understand the audacity of petitioners’ “‘cat out of the bag’ harm” claim in the present case. The petitioners do not assert a privilege to refuse to disclose information like the identity of a confidential informant (which might put the confidential informant in danger), or a trade secret (that could give a competitor an unfair advantage), or private medical information (that could subject an individual to embarrassment or worse). Nothing approaching harms like these has been identified. Partisan political shenanigans are not “state secrets.” Petitioners seek nothing less than to prevent disclosure of “objective” information utilized in the legislative reapportionment process, the process our supreme court recognized as playing a “crucial role ... with respect to the right of citizens to elect representatives .... in a fair manner so that each person’s vote counts ... and so that all citizens receive ‘fair and effective representation.’ ” In re Senate Joint Resolution of Legislative Apportionment 1176, 83 So.3d 597, 600 (Fla.2012). The enactment of article III, section 20 of the Florida Constitution makes plain that how and why the Legislature redistricts is a matter of paramount public concern.[9] Petitioners have fallen far short of demonstrating why failing to keep this quintessentially public business under wraps would work irreparable harm.
Redistricting on a nonpartisan basis is, of course, primarily a legislative responsibility. But our supreme court has left no doubt that it falls to the judicial branch “to enforce adherence to the constitutional requirements and to declare a redistricting plan that does not comply with those standards constitutionally invalid.” Id. at 607. “To accept the Legislature’s assurances that it followed the law without any type of inquiry or any type of meaningful review ... would render the Court’s review of the new constitutional standards, and whether the Legislature complied with the new standards, essentially meaningless.” Id. at 609.[10] Permitting discovery that *132 Amendment 6 plainly makes relevant[11] is presumptively appropriate.
There are, of course, important distinctions between requiring the production of documents and allowing depositions of Legislators to go forward. Legislators, like other deponents, are entitled to court protections against abusive discovery tactics. But Legislators should not, and until today did not, enjoy any blanket immunity from discovery, by virtue of their status as Legislators. See generally United States v. Nixon, 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (weighing “the importance of the general privilege of confidentiality of Presidential communications in performance of the President’s responsibilities against the inroads of such a privilege on the fair administration of criminal justice”). While no crime has been alleged here, constitutional requirements for redistricting must also be enforced. “Voting rights cases, although brought by private parties, seek to vindicate public rights. In this respect, they are akin to criminal prosecutions.” Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections, 2011 WL 4837508, *7 (N.D.Ill. Oct.12, 2011). There are, to be sure, difficult issues [12] concerning the scope of discovery in *133 eases like these that require careful consideration and resolution.
But careful consideration and resolution of these issues can and should await development of a full record and plenary appeal. No irremediable harm warrants the majority opinion’s disruptive approach in the present case.[13] The mere appearance for deposition of a senator and two staff persons would work no harm or any injury of the kind that has historically been required to justify certiorari review: Actually knowing what questions the litigants intended to ask could well shed an invaluable light on these important issues.
Certiorari review also places restrictions on us. See Snyder v. Douglas, 647 So.2d 275, 279 (Fla. 2d DCA 1994) (“[0]n certio-rari an appellate court can only deny the writ or quash the order under review. It has no authority to take any action resulting in the entry of a judgment or order on the merits or to direct that any particular judgment or order be entered.”); Gulf Oil Realty Co. v. Windhover Ass’n, Inc., 403 So.2d 476, 478 (Fla. 5th DCA 1981) (“[A]f-ter review by certiorari, an appellate court can only quash the lower court order; it has no authority to direct the lower court to enter contrary orders.”) (footnote omitted).
Consistent with the limited purpose of this writ, the Court long ago delineated the narrow range of options that are available to a reviewing court on certio-rari review. The role of the reviewing court in such a proceeding is to halt the miscarriage of justice, nothing more:
On certiorari the appellate court only determines whether or not the tribunal or administrative authority whose order or judgment is to be reviewed has in the rendition of such order or judgment departed from the essential requirements of the law and upon that determination either to quash the writ of certiorari or to quash the order reviewed.
When the order is quashed, as it was in this case, it leaves the subject matter, that is, the controversy pending before the tribunal, commission, or administrative authority, as if no order or judgment had been entered and the parties stand upon the pleadings and proof as it existed when the order was made with the rights of all parties to proceed further as they may be advised to protect or obtain the enjoyment of their rights under the law in the same manner and to the same extent which they might have proceeded had the order reviewed not been entered.
The appellate court has no power in exercising its jurisdiction in certiorari to enter a judgment on the merits of the controversy under consideration *134 nor to direct the ... [entry of] any particular order or judgment.
Broward Cnty. v. G.B.V. Int’l, Ltd., 787 So.2d 838, 843-44 (Fla.2001) (quoting Tamiami Trail Tours v. R.R. Comm’n, 128 Fla. 25, 174 So. 451, 454 (1937)). “A court’s certiorari review power does not extend to directing that any particular action be taken, but is limited to quashing the order reviewed.”[14] ABG Real Estate Dev. Co. of Fla., Inc. v. St. Johns Cnty., 608 So.2d 59, 64 (Fla. 5th DCA 1992). See also Nat’l Adver. Co. v. Broward Cnty., 491 So.2d 1262, 1263 (Fla. 4th DCA 1986) (“A court’s certiorari review power does not extend to directing that any particular action be taken, but is limited to denying the writ of certiorari or quashing the order reviewed.”).
“[C]ertiorari review in this instance ‘is an extraordinary remedy and should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders.’ The judicial policy in favor of limited certiorari review is based on the notion that piecemeal review of nonfinal trial court orders will impede the orderly administration of justice and serve only to delay and harass.” Jaye v. Royal Saxon, Inc., 720 So.2d 214, 214-15 (Fla.1998) (citation omitted). See also Abbey v. Patrick, 16 So.3d 1051, 1053 (Fla. 1st DCA 2009) (“[C]ertio-rari is not a remedy that is available as a matter of right. Certiorari is an extraordinary remedy that is entirely within the discretion of the court.”).
The petition for writ of certiorari should be denied.

. The petition for writ of certiorari asserts that the plaintiffs have "indicated that more depositions would follow.” There is, however, nothing in the appendix to support these assertions. See Eight Hundred, Inc. v. Fla. Dep’t of Revenue, 837 So.2d 574, 576 (Fla. 1st DCA 2003) ("Representations by an attorney for one of the parties regarding the facts ... do not constitute evidence.”).

. As our supreme court has said in a closely related context:
[T]he right to elect representatives — and the process by which we do so — is the very bedrock of our democracy. To ensure the protection of this right, the citizens of the state of Florida, through the Florida Constitution, employed the essential concept of checks and balances, granting to the Legislature the ability to apportion the state in a manner prescribed by the citizens and entrusting this Court with the responsibility to review the apportionment plans to ensure they are constitutionally valid. The obligations set forth in the Florida Constitution are directed not to the Legislature’s right to draw districts, but to the people’s right to elect representatives in a fair manner so that each person's vote counts equally and so that all citizens receive "fair and effective representation.”
In re Senate Joint Resolution of Legislative Apportionment 1176, 83 So.3d 597, 600 (Fla. 2012).

. At one time, the Legislature and the Attorney General contended that the Florida Supreme Court could not (and should not) undertake "a meaningful review of compliance with the new constitutional standards” as set *132 out in article III, section 21 when conducting the review required by article III, section 16(c) of the Florida Constitution, but that meaningful review in such cases must "instead await challenges brought in trial courts over a period of time” — in other words, actions such as the respondents are trying to prosecute below under article III, section 20. In re Senate Joint Resolution of Legislative Apportionment 1176, 83 So.3d at 609. The supreme court ruled that time constraints imposed by section 16(c) precluded the supreme court’s "be[ing] able to relinquish for extensive fact-finding.” Id.

. Article III, section 20 explicitly prohibits drawing an apportionment plan or individual district "with the intent to favor or disfavor a political party or an incumbent.” Art. Ill, § 20, Fla. Const. "This is not, then, 'the usual "deliberative process” case in which a private party challenges governmental action ... and the government tries to prevent its decision-making process from being swept up unnecessarily into [the] public domain.'" Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections, 2011 WL 4837508, *8 (N.D.Ill. Oct. 12, 2011) (quoting United States v. Bd. of Educ. of City of Chicago, 610 F.Supp. 695, 700 (N.D.Ill.1985)). As respondents observed in their response below, "the discovery that Plaintiffs seek is not evidence of legislative intent in an abstract or general sense, it is evidence of the very conduct that Amendment 6 explicitly prohibits. Application of a common law legislative privilege to prohibit discovery of the precise act that a constitutional provision explicitly makes impermissible would be plainly inconsistent with that provision.”

. To the extent that a common law legislative privilege exists in Florida, it persists only to the extent "not inconsistent with the Constitution.” § 2.01, Fla. Stat. (2012). See also Matthews v. McCain, 125 Fla. 840, 170 So. 323, 327 (1936) ("The Constitution and statutes of Florida must of course control, and take precedence over the common law when there are any inconsistencies between them.”).
Until Expedia, no Florida court had recognized any legislative, testimonial privilege. The Fourth District had expressly declined to recognize such a privilege, saying:
Section 90.501 of the Florida Evidence Code provides that no person has a privilege to refuse to be a witness or refuse to disclose any matter except as otherwise provided in this chapter, any other statute, or the Florida or United States Constitution. See § 90.501, Fla. Stat. No Florida legislative testimonial privilege has been recognized in the Evidence Code, statutes, or Florida Constitution.
City of Pompano Beach v. Swerdlow Lightspeed Mgmt. Co., LLC, 942 So.2d 455, 457 (Fla. 4th DCA 2006). Unlike other state constitutions that contain speech and debate clauses, the Florida Constitution says nothing explicit about any legislative privilege.
With respect to the federal Speech and Debate clause, the Court stated in United States v. Brewster, 408 U.S. 501, 516-17, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972):
*133 We would not think it sound or wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process. Given such a sweeping reading, we have no doubt that there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process....
... [T]he shield does not extend beyond what is necessary to preserve the integrity of the legislative process.

. Allowing trial proceedings to go forward unimpeded, and for appeal from final judgment, would take time, but presumably nothing like the interval that will elapse before another census leads to another redistricting. Even assuming the possibility of some chilling effect on conversations among Legislators and their staffs in the redistricting process, such harm remains speculative only, and no basis for certiorari review. We are concerned here only with redistricting, not with the mine run of legislation.

. The majority opinion's approach amounts to a "partial quashal” in that the trial court’s order is allowed to stand insofar as it pertains to documents, while it is overturned, insofar as it allows depositions.